**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EVAN RASKIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 26-2428 (SLS) |
| | § | |
| BUILD A SIGN, LLC, | § | |
| | § | |
| *Defendant.* | § | |

**DEFENDANT BUILD A SIGN LLC'S COMBINED
RULE 12(b)(2) MOTION TO DISMISS, AND
MOTION TO COMPEL ARBITRATION AND STAY PURSUANT TO THE FAA AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## TABLE OF CONTENTS

TABLE OF CASES ................................................................................................................ iv

Motion to Dismiss Pursuant to  Federal Rule of Civil  Procedure 12(b)(2) ................................... 1

I.       Factual Background ........................................................................................................ 3

      A.       Plaintiff asserts only one basis for personal jurisdiction over Texas-based BAS in this forum: that his claims for relief purportedly arise from BAS "transacting any business" in D.C. ............................................................................................ 3

      B.       The Complaint asserts a single purchase from a single BAS website. ................... 4

      C.       The Complaint pleads for relief arising out of the alleged "exposure" of Plaintiff and other District residents to online and email advertising, rather than from any alleged BAS-customer transaction. ........................................................................ 5

II.      Legal Standard ............................................................................................................... 7

III.     Argument and Authorities ............................................................................................... 9

      A.       D.C.'s long-arm statute requires Plaintiff to present specific jurisdictional facts establishing that *each* of its claims arise from BAS' transaction of business in D.C. ............................................................................................................................. 10

      B.       The Complaint pleads a right to relief arising from BAS' publication of its prices online and in emails – expressly divorced from any BAS-consumer transaction. 11

      C.       Section 13-423(a)(1) does not confer personal jurisdiction over BAS because the Complaint challenges BAS business activities undertaken *outside* the District... 13

      D.       Jurisdiction over BAS does not lie in this forum because D.C. consumers viewing BAS' online advertising and marketing emails does not comprise the "transacting [of] any business in the District of Columbia." ................................................... 15

      E.       The District's long-arm statute specifically bars Plaintiff from invoking pendant jurisdiction to establish personal jurisdiction over BAS for claims that do not independently satisfy § 13-423(a)(1). ................................................................... 17

IV.      Conclusion and Prayer .................................................................................................. 17

Motion to Compel Arbitration and Stay Pursuant to the Federal Arbitration Act ....................... 19

I.       Factual Background ...................................................................................................... 20

      A.       The Complaint's pleading of a single customer purchase from one BAS storefront confirms Plaintiff's assent to EasyCanvasPrints.com's Terms. ........................... 20

      B.       Plaintiff adopted Terms containing a binding and enforceable arbitration provision, which requires resolution of this dispute through arbitration in Austin, Texas pursuant to the AAA rules. .............................................................................. 22

II.      Argument and Authorities ............................................................................................. 23

      A.       Plaintiff assented to the Terms, and formed a valid and enforceable contract, when he clicked the "Secure Checkout" button. ......................................................... 25

B.     Because the Terms incorporate the AAA rules, the parties' Agreement delegates all questions of arbitrability to the Arbitrator, not this Court.................................... 27

C.     FAA Section 3 mandates that this litigation "shall" be stayed, pending the outcome of the arbitration................................................................................................ 29

III.     Conclusion and Prayer ................................................................................................ 30

CERTIFICATE OF SERVICE .................................................................................................. 31

## TABLE OF CASES

**Cases**

*Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*,
531 F.3d 863 (D.C. Cir. 2008) ........................................................................................ 24

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................................................................................................... 23

*Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*,
148 F.3d 1080 (D.C. Cir. 1998) ........................................................................................ 8

*Commc'ns Workers of Am. v. AT&T Inc.\**,
6 F.4th 1344 (D.C. Cir. 2021) ............................................................................... 25, 27, 28

*Crane v. New York Zoological Soc.*,
894 F.2d 454 (D.C. Cir. 1990) .......................................................................................... 8

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ................................................................................................. 8, 9, 11

*Erwin-Simpson v. AirAsia Berhad*,
985 F.3d 883 (D.C. Cir. 2021) .......................................................................................... 8

*First Chicago Int'l v. United Exchange Co.*,
836 F.2d 1375 (D.C. Cir. 1988) ...................................................................................... 10

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ....................................................................................................... 24

*Forras v. Rauf\**,
812 F.3d 1102 (D.C. Cir. 2016) ................................................................................. passim

*Gambo v. Lyft, Inc.*,
642 F. Supp. 3d 46 (D.D.C. 2022) ................................................................................... 27

*GTE New Media Servs. Inc. v. BellSouth Corp.\**,
199 F.3d 1343 (D.C. Cir. 2000) ................................................................................. 15, 16

*Hayes v. FM Broad. Station WETT*,
930 F. Supp. 2d 145 (D.D.C. 2013) ................................................................................. 16

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
466 U.S. 408 (1984) ....................................................................................................... 11

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
586 U.S. 63 (2019) ......................................................................................................... 24

*N-Bar Trade, Inc. v. Amazon.com Servs. LLC*,
807 F. Supp. 3d 11 (D.D.C. 2025) ................................................................................... 28

*Rent-A-Ctr., W., Inc. v. Jackson*,
561 U.S. 63 (2010) ......................................................................................................... 24

*Safex Found., Inc. v. Safeth, Ltd\**,
538 F. Supp. 3d at 8 (D.D.C. 2021) .......................................................................... passim

*Selden v. Airbnb, Inc.\**,
   4 F.4th 148 (D.C. Cir. 2021) ................................................................ 24, 25, 26, 27

*Sinclair v. TubeSockTedD*,
   596 F.Supp.2d 128 (D.D.C. 2009) ........................................................................ 15

*Smith v. Spizzirri\**,
   601 U.S. 472 n.2 (2024) ..................................................................................... 8, 29

*Triple Up Ltd. v. Youku Tudou Inc.*,
   2018 WL 4440459 (D.C. Cir. July 17, 2018) .................................................. 10, 13, 15

*Triple Up Ltd. v. Youku Tudou Inc.*,
   235 F. Supp. 3d 15 (D.D.C. 2017),
   *aff'd,* 2018 WL 4440459 (D.C. Cir. July 17, 2018) ............................................... 11

*Williams v. Romarm, SA*,
   756 F.3d 777 (D.C. Cir. 2014) ................................................................................ 8

## Statutes, Rules, & Regulatory Materials

9 U.S.C. § 2 ............................................................................................................ 24

9 U.S.C. § 3 ............................................................................................................ 29

9 U.S.C. § 4 ............................................................................................................ 24

D.C. Code § 13-423 ......................................................................................... 4, 9, 10, 11

Fed. R. Civ. P. 12(b)(2) ............................................................................................. 7

Defendant Build A Sign, LLC ("BAS" or "Defendant") respectfully submits this Combined Rule 12(b)(2) Motion to Dismiss, and Motion to Compel Arbitration and Stay Pursuant to the Federal Arbitration Act, and memorandum of points and authorities in support thereof.  Pursuant to Local Civil Rules 7(f) and 78.1, Defendant respectfully requests that the Court exercise its discretion to hear oral argument on this combined Motion.

**MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULE OF CIVIL  PROCEDURE 12(B)(2)**

Plaintiff Raskin has sued online retailer Build A Sign ("BAS") for false advertising, claiming that consumers are injured each time they encounter a BAS display of its true and correct product pricing that suggests the item is offered at a discount or "on sale."

Plaintiff seeks to hale BAS into court in his home forum, the District of Columbia—1,500 miles from Defendant's place of incorporation and center of operations—simply because Plaintiff Raskin himself lives in the District.  Plaintiff admits BAS sets its prices and runs its advertising from its Austin, Texas headquarters, and has no physical presence in the District.  He offers nothing to suggest that BAS targets District consumers in any way other than by offering its products to a nationwide audience – and indeed BAS does nothing to target the District in particular.

The Complaint's sole factual allegation tying BAS to the District is that Plaintiff purchased a single item from a single BAS website, while *Plaintiff* was located in the District.  At the same time, Raskin insists that his claims all arise "regardless of whether the consumer purchased Defendant's products and services," because he challenges BAS' *advertising* of its pricing, as opposed to any aspect of its product sales.  Indeed, Plaintiff does not complain of any problems with his actual BAS transaction: he does not allege that he was misled about the item's actual price, was overcharged, received anything less than he paid for, or in any other way felt dissatisfied with

1

the quality of the product or service he received.  To the contrary, Plaintiff specifically pleads that he will consider purchasing from BAS' online stores again in the future.

Plaintiff has pleaded himself out of this Court.  D.C.'s long-arm statute (consistent with Constitutional due-process requirements) only confers jurisdiction over non-resident defendants for claims ***arising out of business actually transacted in the District***, and the Complaint makes clear that Plaintiff does not allege any such claims: he is suing for false advertising that he alleges BAS engaged in *outside* the District.  Furthermore, even if the governing law allowed Raskin to use his own location to establish BAS' jurisdictional contact with the District (it does not), Plaintiff cannot save his lawsuit by pointing to his single purchase from BAS, for two reasons.  First, D.C.'s long-arm statute explicitly bars Plaintiff from bootstrapping personal jurisdiction for one claim into pendant jurisdiction over others, so any claim not arising directly out of his own transaction still cannot be litigated in this forum.  Second, as explained *infra* in BAS' Motion to Compel Arbitration and Stay, at the time he made his purchase from BAS' website, Plaintiff Raskin assented to the EasyCanvasPrints.com Terms and Conditions, which include a binding agreement that all claims arising out of or related to that transaction *must be resolved through arbitration*, not litigation.

Plaintiff Raskin cannot have it both ways: to the extent his claims arise out of his purchase from BAS, they must be arbitrated, not litigated; and to the extent they do not so arise, the purchase transaction *cannot* be used to establish personal jurisdiction over BAS.  Either way—whether his claims must be dismissed or ordered to arbitration—Plaintiff's lawsuit cannot proceed in this forum.

In sum, Plaintiff's failed to plead any plausible basis for this Court to exercise jurisdiction over BAS in this lawsuit.  His Complaint is properly dismissed under Federal Rule of Civil

Procedure 12(b)(2) for lack of personal jurisdiction, and to the extent any claim is not so dismissed, the Court must enforce the parties' agreement to arbitrate, rather than litigate, their dispute.

## I.    Factual Background

### A. Plaintiff asserts only one basis for personal jurisdiction over Texas-based BAS in this forum: that his claims for relief purportedly arise from BAS "transacting any business" in D.C.

Defendant BAS operates the e-commerce websites at the heart of this dispute from its headquarters in Austin, Texas.  Dkt. 1-2 (hereinafter "Complaint") at ¶¶ 2, 8. 14.  Plaintiff alleges that he saw BAS' pricing advertised as "discounted" or "sale" on one or more websites belonging to BAS or third parties, received mass-marketing emails, and one time made a purchase from EasyCanvasPrints.com, a BAS e-commerce storefront.  Based on these interactions, Plaintiff pleads three causes of action under the District of Columbia's Consumer Protection Procedures Act ("CPPA") on behalf of himself and a broad putative class of all D.C. consumers "exposed to" BAS' advertising.  Specifically, Plaintiff alleges violations of three specified subsections of D.C. Code § 28-3904 for eleven separate e-commerce websites, based on the way BAS allegedly presents its prices on the internet and in mass-marketing emails. *See* Complaint ¶¶ 44, 49, 53, 56.

Though the Complaint pleads that the challenged "pricing scheme is planned and/or coordinated from Defendant's Austin headquarters," Plaintiff nevertheless seeks to hale BAS into court in Washington, DC.  *See* Complaint ¶ 14.  To justify suing BAS in a forum 1,500 miles away from the company's place of business, Plaintiff broadly alleges that BAS: (a) operates websites accessible to and targeting consumers in the District of Columbia; (b) advertises its products to District residents through online channels; (c) solicits and accepts orders from District consumers; and (d) ships products to District addresses. *See id.* ¶ 12.

3

Plaintiff does ***not*** plead that BAS has any operations in D.C. or does anything to specifically target D.C. consumers—as opposed to merely operating online storefronts out of its Texas headquarters that are equally accessible in every jurisdiction nationwide. In fact, BAS has no physical presence of any kind in DC, and does nothing to specifically target the DC market with its nationwide online retail businesses.[1] *See* July 17, 2026 Declaration of Jeff Novak ("Novak Decl.") at ¶ 3. Finally, the Complaint's only allegation of any transaction between BAS and any customer is a single purchase made by Plaintiff, in which *Plaintiff*—but nothing related to BAS' business—purports to have been physically located in D.C.

Significantly, the Complaint pleads a highly circumscribed basis for BAS to be haled before this court, relying ***exclusively*** on a single, narrow provision of DC's long-arm statute— D.C. Code § 13-423(a)(1)—which provides, in its entirety:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's -- (1) transacting any business in the District of Columbia.

D.C. Code § 13-423(a)(1); *see* Complaint ¶ 12.

### B. The Complaint asserts a single purchase from a single BAS website.

Though the 25-page Complaint asserts sweeping claims against eleven distinct e-commerce domains—on behalf of Raskin as well as two plaintiff classes he purports to represent— the Complaint pleads only a single purchase from a single BAS online storefront. Specifically, Plaintiff Raskin avers that he ordered one canvas print at EasyCanvasPrints.com at a total price of $80.10 (including tax and shipping), on or about November 9, 2025, with delivery to a D.C.

---

[1] Because, as explained below, Plaintiff's attempt to hale BAS before this Court fails on the face of the pleading and the governing provision of D.C.'s long-arm statute, BAS' business contacts with the District of Columbia are immaterial to the resolution of this Motion. However, it is worth noting that only a tiny fraction—less than one fifth of one percent—of BAS' sales involve a customer with either a billing address *or* mailing address in the District. Novak Decl. ¶ 3.

address. Complaint ¶ 6; *see also id.* at ¶ 28 (describing Raskin's purchase, including his experience accepting BAS' Terms and Conditions as part of his Checkout).

The Complaint does not take issue with any aspect of Plaintiff's purchase transaction, much less allege any actionable misconduct arising out of the purchase itself. For example, Plaintiff does ***not*** plead that he was misled as to the actual price he would be charged for his purchase, or otherwise overcharged in any way. *See generally*, Complaint. Nor does he allege that he received anything less than he paid for. *Id.* Nor does he complain about the quality of the item he purchased, the timeliness of its delivery, or any other aspect of BAS' business activities related to the product it sold to him. *Id.* Indeed, far from pleading any dissatisfaction with Plaintiff's solitary BAS transaction, the Complaint affirms that Plaintiff intends to consider purchasing from BAS' various storefronts again in the future. *See id.* at ¶ 38 (pleading that Raskin will continue to receive BAS "marketing emails"—from which he could opt out at will, *see* Novak Decl. ¶ 3—and will engage in "continued consideration of future purchases" from BAS e-commerce sites).

### C. The Complaint pleads for relief arising out of the alleged "exposure" of Plaintiff and other District residents to online and email advertising, rather than from any alleged BAS-customer transaction.

Rather than pleading any claim arising out of Plaintiff's solitary transaction with BAS, the Complaint repeatedly emphasizes that Plaintiff's claims for relief arise independently from any customer's actual purchase of BAS' products.[2]

---

[2] Plaintiff is trying to plead around an intractable dilemma that is ultimately fatal to his lawsuit before this Court: as explained in the Motion to Compel Arbitration below, personal jurisdiction cannot be established over BAS in this forum without triggering Plaintiff's contractual obligation to arbitrate, rather than litigate, his claims. In sum, this Court has jurisdiction over BAS only to the extent BAS transacted business in D.C., but the only business BAS allegedly transacted in D.C. was Plaintiff's single purchase from EasyCanvasPrints.com – in which Plaintiff entered a binding agreement to *arbitrate* all claims related to that transaction. Plaintiff cannot have it both ways: either his claims are divorced from that transaction, in which case they must be dismissed for lack

Plaintiff's pleading insists that the right to relief he claims is ***not*** predicated on any business being transacted between BAS and any D.C. consumer, averring that "Defendant violates the CPPA each time a D.C. consumer views Defendant's ubiquitous fictitious discounts on its webpages, ***regardless of whether the consumer purchased*** Defendant's products and services; [and] each time the consumer receives promotional emails from Defendant."  Complaint ¶ 3 (emphasis added); *see also id.* at ¶ 26 (alleging that "the CPPA violation occurs" when "representations are [merely] displayed in search results and on publicly accessible web pages" (emphasis added)). According to the Complaint, BAS purportedly violated and continues to violate the CPPA every time Raskin or a putative class member "searches online" and "encounters Defendant's brand domains . . . among the providers presented in his search results" or receives "marketing emails containing the challenged fictitious reference prices and purported discounts." *See id.* at ¶ 7.

Thus Plaintiff asserts his three false advertising claims on behalf of himself and two so-called "Exposure Classes"—respectively seeking damages and injunctive relief—that comprise "all District consumers shown the challenged pricing on Defendant's websites or in its marketing emails." *See id.* at ¶ 5 (emphasis added).  In Plaintiff's own words, "[t]he statutory violation alleged in this complaint—the publication of fictitious reference prices to D.C. consumers—is ***complete before the consumer reaches checkout***." *Id.* at ¶ 25 (emphasis added).

Lest there be any doubt, the Complaint clarifies: "Defendant's fictitious reference pricing causes concrete injuries to members of the Exposure Damages Class ***regardless of whether they ultimately complete a purchase***." *Id.* at ¶ 33 (averring that "[t]he statutory violation at D.C. Code § 28-3904 is itself complete at the moment of publication"); *see also id.* at ¶ 34 (confirming that

---

of jurisdiction, or they arise from that transaction, in which case they must be referred to arbitration.

Raskin is alleging "a completed statutory violation under the CPPA **upon publication** of [purported] fictitious reference pricing to District consumers" as well as "separate concrete injuries" from potential customer's "search, comparison, inquiry, verification, and decision-making" efforts while shopping—even if no business is ever transacted with BAS); ¶ 38 (alleging that Plaintiff's alleged "continued exposure" to "ongoing marketing emails and continued consideration of future purchases" makes him a representative candidate to seek relief for both the classes he seeks to certify).

In fact, even as the Complaint details Plaintiff's lone purchase, it confirms that Plaintiff's claims for relief are **not** predicated on the transaction being described. *See id.* at ¶ 6. After alleging that Plaintiff was "exposed to Defendant's representations" of "discounts . . . off purported 'regular' prices[,] on publicly accessible web pages," Plaintiff recites the particulars of his transaction, and then closes the paragraph by asserting: "Prior to **and independently of** his purchase, Plaintiff was deprived of truthful pricing information required by the CPPA." *See id.* (emphasis added).

Finally, the broad scope of relief Plaintiff seeks confirms that his claims are divorced from any purchase transaction: though the Complaint pleads only one purchase made from a single BAS e-commerce site, Plaintiff seeks relief for alleged violations by *eleven* distinct e-commerce domains. *See id.* at ¶¶ 8, 14.

## II.     <u>Legal Standard</u>

The Federal Rules of Civil Procedure authorize defendants to assert the defense of lack of personal jurisdiction by motion, before filing a responsive pleading. Fed. R. Civ. P. 12(b)(2). As the D.C. Circuit has explained, "determining jurisdiction is a federal court's first order of

business," because "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Forras v. Rauf*, 812 F.3d 1102, 1105 (D.C. Cir. 2016) (quoting *Ex parte McCardle,* 74 U.S. 506, 514 (1868)).

As Plaintiff, Raskin bears the burden of establishing a factual basis for this Court to exercise personal jurisdiction over BAS. *Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014) (citing *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990). To the extent Plaintiff fails to establish this court's jurisdiction, Plaintiff's claim(s) are properly dismissed. *See, e.g.*, *Smith v. Spizzirri*, 601 U.S. 472, 476 n.2 (2024). However, such dismissal is without prejudice to Plaintiff's ability to pursue relief in an alternate forum, in which the defendant's conduct and contacts are sufficient to satisfy statutory and constitutional jurisdiction requirements. *See, e.g.*, *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C. Cir. 1998)

There are two types of personal jurisdiction: "general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). The Complaint does not assert general jurisdiction over BAS in the District, nor could it, as Plaintiff's factual allegations do not come anywhere close to establishing that BAS is "essentially at home in th[is] forum." *See, e.g.*, *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 891 (D.C. Cir. 2021) (quoting *id.* at 138-39) (holding that multiple internet sales to D.C. customers by a company with no physical presence in the District was an insufficient basis for general jurisdiction to attach in D.C).

Instead, all of Plaintiff's causes of action rely on a single jurisdictional theory: Plaintiff alleges that BAS is properly haled before this Court pursuant to subsection (a)(1) of the District of Columbia's long-arm statute, D.C. Code § 13-423, which confers specific jurisdiction over a "claim for relief arising from [a] person's . . . transacting any business in the District of

8

Columbia."³   Personal jurisdiction under this subsection must be established independently for each claim asserted, and for jurisdiction to attach, "(1) the defendant must have conducted business in the District of Columbia, and (2) plaintiff's claim against the defendant must arise from that business." *Safex Found., Inc. v. Safeth, Ltd.*, 538 F. Supp. 3d at 8 (D.D.C. 2021) (citing *Forras*, 812 F.3d at 1106 (citing *Crane*, 814 F.2d at 762)); *see also* D.C. Code § 13-423(a)(1).

### III.     Argument and Authorities

BAS is not subject to personal jurisdiction in this forum for the alleged false advertising Plaintiff asserts, because the Complaint does *not* assert any "claim for relief arising from [BAS] . . . transacting any business in the District of Columbia." *See* D.C. Code §13-423(a)(1).

In support of its jurisdictional assertion, Plaintiff alleges that BAS: (a) operates websites accessible to and targeting consumers in the District of Columbia; (b) advertises its products to District residents through online channels; (c) solicits and accepts orders from District consumers; and (d) ships products to District addresses. *See* Complaint ¶ 12.  But the Complaint itself insists that its three causes of action seek relief *independent* of any alleged customer transaction with BAS.  As a result, whether or not BAS accepts orders from District consumers or ships product to the District has no bearing on personal jurisdiction in this case.  And D.C. Circuit precedent is clear that merely advertising through online channels and operating websites that are accessible in the District is *not* enough for specific jurisdiction to attach under D.C.'s long-arm statute.

In short, Plaintiff claims a right to relief arising from activities that, "[u]nder controlling circuit precedent," ***do not*** constitute "transacting any business in the District of Columbia"

---

³ In addition, Plaintiff's jurisdictional allegations also fail to meet the due process requirements of the United States Constitution, because they do not establish the minimum contacts and purposeful availment of this forum required to avoid offending traditional notions of fair play and substantial justice. *See, e.g., Daimler,* 571 U.S. at 126.

9

pursuant to D.C. Code §13-423(a)(1)—and therefore "the complaint makes no plausible allegation of personal jurisdiction." *See Forras*, 812 F.3d at 1109. Accordingly, Federal Rule of Civil Procedure 12(b)(2) requires dismissal of all of Plaintiff's claims for lack of personal jurisdiction over BAS in this forum. *See id.*

### A. D.C.'s long-arm statute requires Plaintiff to present specific jurisdictional facts establishing that *each* of its claims arise from BAS' transaction of business in D.C.

The plain language of D.C.'s long-arm statute requires Plaintiff to establish personal jurisdiction for *each* of his claims, based on the alleged BAS business activities *that actually give rise to the claim* Plaintiff asserts. *See* D.C. Code § 13-423. In particular, subsection 13-423(b) explicitly bars Plaintiff from bootstrapping specific jurisdiction for a cause of action out of ancillary BAS business activities, that are independent of the alleged wrongdoing from which Plaintiff claims relief. *See, e.g.*, *Forras*, 812 F.3d at 1106; *Safex*, 538 F. Supp. 3d at 8. Importantly, "[c]onclusory statements in a complaint 'do not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction.'" *Triple Up Ltd. v. Youku Tudou Inc.*, 2018 WL 4440459, at *2 (D.C. Cir. July 17, 2018) (quoting *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378–1379 (D.C. Cir. 1988) (citation and internal alteration omitted)).

While subsection (a) of the District's long-arm statute establishes specific jurisdiction over nonresident defendants for certain types of claims, subsection (b) imposes an exacting nexus requirement, stating (in its entirety): "When jurisdiction over a person is based solely upon this section [13-423], only a claim for relief arising from acts enumerated in this section [13-423] may be asserted against him." The "acts enumerated" are listed in Sections 13-423(a)(1)–(7), which establish the seven categories of D.C.-based activity that can give rise to long-arm specific jurisdiction. As discussed *supra*, Plaintiff has asserted subsection (a)(1), which addresses claims arising from a defendant "transacting any business in the District of Columbia"; the remaining six

10

categories have not been pleaded and do not apply to the instant circumstances. *See id.* § 13-423(a)(2)-(7) (enumerating acts undertaken in the District of Columbia, including "contracting to supply services"; "causing tortious injury"; activities related to real property; "contracting to insure or act as a surety"; and engaging in certain familial relationships).

Because Plaintiff's jurisdictional allegations are wholly reliant on subsection (a)(1), the plain language of Section 13-423(b) requires Plaintiff—in order to sue BAS in this forum—to establish that *each of his claims* arises from a BAS act of "transacting . . . business in the District of Columbia." *See* Complaint ¶ 12; D.C. Code § 13-423(a)(1), (b); *Safex*, 538 F. Supp. 3d at 8 (holding that for jurisdiction to attach pursuant to § 13-423(a)(1), "(1) the defendant must have conducted business in the District of Columbia, and (2) plaintiff's claim against the defendant must arise from that business" (citing *Forras*, 812 F.3d at 1106)). Any claim that does *not* arise from a BAS act of transacting business in D.C. falls outside the reach of D.C.'s long-arm statute, and must be dismissed for lack of personal jurisdiction. *See, e.g., Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 26 (D.D.C. 2017), *aff'd*, 2018 WL 4440459 (D.C. Cir. July 17, 2018) (declining to consider the jurisdictional implications of third-party advertisement on a defendant's website, because the plaintiff's "lawsuit does not 'aris[e] out of or relate[ ] to' those third-party advertisements, as specific jurisdiction requires" (modifications in original) (citing *Daimler*, 571 U.S. at 127 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 (1984))).

**B. The Complaint pleads a right to relief arising from BAS' publication of its prices online and in emails – expressly divorced from any BAS-consumer transaction.**

As detailed in the Factual Background above, *see supra*, Part I.C, Plaintiff's pleading insists that the right to relief he claims is **not** predicated on any business transaction between BAS and any D.C. consumer. In Plaintiff's own words, "[t]he statutory violation alleged in this

11

complaint—the publication of fictitious reference prices to D.C. consumers—is **complete before the consumer reaches checkout**.”  Complaint ¶ 25 (emphasis added); *see also id.* at ¶ 3 (alleging a new CPPA violation “each time a D.C. consumer views Defendant’s ubiquitous fictitious discounts on its webpages” and “each time the consumer receives promotional emails from Defendant” – “***regardless of whether the consumer purchased*** Defendant’s products and services” (emphasis added));  ¶ 7 (alleging a violation every time a putative class member “searches online” and “encounters Defendant’s brand domains . . . among the providers presented in his search results” or receives “marketing emails containing the challenged fictitious reference prices and purported discounts”).

Plaintiff also proposes plaintiff classes that do not require any purchase, but instead would comprise “Exposure” classes of “all District consumers ***shown the challenged pricing*** on Defendant’s websites or in its marketing emails.” *Id.* at ¶ 5 (emphasis added).  Plaintiff expressly seeks relief for his “Exposure Damages Class” from BAS’ purported “fictitious reference pricing [which allegedly] causes concrete injuries to members of the Exposure Damages Class ***regardless of whether they ultimately complete a purchase***.”  *Id.* at ¶ 33 (emphasis added) (averring that “[t]he statutory violation at D.C. Code § 28-3904 is itself complete at the moment of publication”); *see also id.* at ¶ 34 (confirming that Raskin is alleging “a completed statutory violation under the CPPA upon publication of [purported] fictitious reference pricing to District consumers” as well as “separate concrete injuries” from potential customer’s “search, comparison, inquiry, verification, and decision-making” efforts while shopping—even if no business is ever transacted with BAS); ¶ 38 (alleging that Plaintiff’s alleged “continued exposure” to “ongoing marketing emails and continued consideration of future purchases” makes him a valid representative of the classes he seeks to certify).

Plaintiff has pleaded himself out of this Court.  As explained just above, *see* Part III.A *supra*, the District's long-arm statute reaches only claims arising out of business actually transacted in D.C.  *See* D.C. Code § 13-423(b). But Plaintiff pleads claims based on purported false advertising, which he admits is a business activity undertaken *outside* of this forum.  *See* Complaint ¶ 14 (clarifying that BAS' challenged "pricing scheme is planned and/or coordinated from Defendant's Austin headquarters").  The only BAS activity allegedly located *in this forum* is Plaintiff's single purchase from EasyCanvasPrints.com, which Plaintiff extrapolates into an allegation that BAS solicits and accepts orders from District Customers and ships products to District addresses.  *See id.* at ¶ 12.  Even were this true, Plaintiff cannot rely on any of these purchase transactions to establish personal jurisdiction over BAS for claims based on false advertising, because the Complaint insists that Plaintiff's claims arise *entirely independently* of whether or not the consumer ever places an order or makes a purchase.  *See* Part I.C, *supra*; *see also, e.g.*, *Triple Up*, 2018 WL 4440459 at *2 (disregarding the defendant's contacts with a forum related to service of process and "software development deals" when assessing personal jurisdiction for "wholly unrelated" copyright infringement claims based on internet content).

Simply put, because the act of consummating a sale with a consumer is entirely divorced from the activities of setting and advertising pricing, Plaintiff cannot use evidence of any BAS sale(s) to D.C. consumer(s) to establish personal jurisdiction over BAS for the three causes of action alleged in his Complaint.

**C. Section 13-423(a)(1) does not confer personal jurisdiction over BAS because the Complaint challenges BAS business activities undertaken *outside* the District.**

Because Plaintiff cannot rely on any sales transaction to establish specific jurisdiction for its false advertising claims, he is left arguing that D.C. Code § 13-423(a)(1) brings Texas-based

BAS under this Court's jurisdiction solely because Plaintiff and other internet users allegedly viewed BAS' pricing online and in emails while they were located in D.C.

Plaintiff's jurisdiction theory is not viable. As the D.C. Circuit established a decade ago, "the plain text of subsection (a)(1), however, focuses on where the defendant undertook the challenged (business) actions, not where the plaintiff felt the injury." *Forras*, 812 F.3d at 1106 (holding that an out-of-District defendant was not subject to personal jurisdiction in D.C. because he had not "transacted his challenged . . . business in the District").

The Complaint itself establishes that Defendant's challenged business actions took place *outside* this forum: Plaintiff explicitly pleads that the challenged "pricing scheme is planned and/or coordinated *from Defendant's Austin headquarters*." *See* Complaint ¶ 14. This jurisdictional fact is dispositive, because as just explained, all of Plaintiff's causes of action challenge the substance and dissemination of this so-called "pricing scheme." *See* Part III.B *supra*. As highlighted above, for personal jurisdiction to attach to BAS for any given claim, "(1) [BAS] must have conducted business in the District of Columbia, and (2) plaintiff's claim against [BAS] must arise from that business." *See Safex*, 538 F. Supp. 3d at 8 (citing *Forras*, 812 F.3d at 1106).

Here, the Complaint does not allege that BAS undertook any business activities in the District related to the setting, advertising or marketing of its prices – which is the challenged activity that gives rise to all Plaintiff's claims. *See generally*, Complaint. Plaintiff does not even allege that BAS' websites, or the sites upon which Plaintiff(s) allegedly viewed the challenged pricing, are hosted in this forum. *Id.* Instead, the sole D.C. connection Plaintiff alleges for the challenged business activity is the *location of Plaintiff(s)* when they viewed online content disseminated to a nationwide audience. *See, e.g.*, *id.* at ¶ 30 (restricting the proposed plaintiff classes to persons viewing the content "while physically located in the District of Columbia"). But

14

controlling precedent holds that the viewing of a nonresident Defendant's online content by a plaintiff located in D.C. is *not* sufficient to confer jurisdiction under D.C. Code § 13-423(a)(1). *See Forras*, 812 F.3d at 1106; *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000); *see also Triple Up*, 2018 WL 4440459 at \*2.

Accordingly, Plaintiff has failed to meet his jurisdictional burden, and BAS is entitled to dismissal under Rule 12(b)(2).

### D. Jurisdiction over BAS does not lie in this forum because D.C. consumers viewing BAS' online advertising and marketing emails does not comprise the "transacting [of] any business in the District of Columbia."

Plaintiff has failed to meet his burden to establish personal jurisdiction over BAS for yet another reason: the alleged "exposure" to BAS' purported false advertising does not satisfy the "transacting any business" requirement for jurisdiction to attach under § 13-423.

Binding D.C. Circuit court precedent establishes that the mere fact that plaintiffs can access BAS' online and emailed pricing displays in the District is insufficient to confer personal jurisdiction over this out-of-District defendant.  *See Forras*, 812 F.3d at 1106; *GTE*, 199 F.3d at 1350 (holding that the "mere accessibility of the defendants' websites" is insufficient to "establish[] the necessary 'minimum contacts'" to confer personal jurisdiction); *see also Sinclair v. TubeSockTedD*, 596 F.Supp.2d 128, 133 (D.D.C. 2009) (holding that publishing allegedly defamatory statements on the internet that "can be downloaded and viewed in the District of Columbia" nevertheless was "insufficient to establish personal jurisdiction" in this forum).

In its seminal case addressing the extent to which internet activities can confer personal jurisdiction over a nonresident defendant, the D.C. Circuit established that "personal jurisdiction surely cannot be based solely on the ability of District residents to access the defendants' websites," because website access "reflects nothing more than a telephone call by a District resident to the

15

defendants' computer servers." *GTE*, 199 F.3d at 1349-1350. To hold otherwise would "vitiate long-held and inviolate principles of federal court jurisdiction." *Id.*

*GTE* also confirmed that this conclusion holds even if a defendant advertises on third-party websites and search engines in order to reach more customers in the District: a non-resident defendant who targets a nationwide audience with online marketing activities undertaken outside this forum *is not* "transacting any business in the District of Columbia" under § 13-423(a)(1), regardless of the location of its viewers. *Id.*; *see also Hayes v. FM Broad. Station WETT*, 930 F. Supp. 2d 145, 151–52 (D.D.C. 2013) (holding that personal jurisdiction did not attach under § 13-423 even though the defendant's website was accessible from D.C., because the plaintiff did not show "that the defendants purposefully availed themselves of the District of Columbia any more than they availed themselves of every other jurisdiction in which their website was accessible").

Mass-marketing email blasts that reach D.C. consumers are similarly unable to confer jurisdiction on non-resident BAS. A district court in this Circuit recently addressed whether a foreign company's "self-promotional Tweets" that were sent to recipients in the challenged forum were sufficient to establish specific personal jurisdiction, and found that they were not – because the social media blast did not "evince any effort to target" the residents of that forum in particular. *See Safex*, 694 F. Supp. 3d at 16–17. There is no material difference between BAS' mass-marketing emails that Plaintiff alleges were viewed in the district, and self-promotional tweets entering the forum at issue in *Safex*.

Because Plaintiff has not pleaded—and the facts do not support, *see* Novak Decl. ¶ 3—that BAS has targeted D.C. in particular with its advertising, this case falls squarely within the settled law of this Circuit that precludes personal jurisdiction over a defendant who merely distributes

16

electronic content into the District as part of its nationwide activities.  *See Safex*, 694 F. Supp. 3d at 16–17.

> **E.  The District's long-arm statute specifically bars Plaintiff from invoking pendant jurisdiction to establish personal jurisdiction over BAS for claims that do not independently satisfy § 13-423(a)(1).**

As noted in Part III.A, *supra*, D.C. Code § 13-423(b) restricts the scope of the District's long-arm statute to conferring jurisdiction *only* over claims "for relief arising from acts enumerated in this section."  This express restriction bars Plaintiff from invoking pendant jurisdiction to establish personal jurisdiction over BAS for any of his claims.  In other words, subsection (b) of the District's long-arm statute precludes Plaintiff's attempt to leverage a single purchase from a single BAS online storefront into a sweeping lawsuit against BAS in this forum.

As explained above, Plaintiff has failed to meet his burden to establish this court's jurisdiction over BAS for *any* of his pleaded claims.  But even if the Court were to find that personal jurisdiction attaches to BAS in this forum, *e.g.*, for a claim based on Plaintiff's single purchase from EasyCanvasPrints.com, BAS would still be entitled to dismissal of all of Plaintiff's claims that did *not* arise out of that particular purchase.  As explained above, this would include *all* of Plaintiff's false advertising claims that are asserted independently of any purchase transaction, and *all* claims related to any BAS e-commerce site other than EasyCanvasPrints.com – the only e-commerce site from which Plaintiff made any purchase.  Because Plaintiff cannot meet his burden for jurisdiction to attach under D.C. Code 13-423(a)(1), these claims are properly dismissed in any case under Rule 12(b)(2), for the reasons laid out above.

## IV.    Conclusion and Prayer

The District's long-arm statute only confers personal jurisdiction over BAS for claims arising out of BAS' actual business activities in the District.  As Plaintiff's pleading admits, BAS

does not engage in the challenged price-setting and advertising activities in the District.  And though Plaintiff pleads that BAS made a sale to him in this District, he also insists that his causes of action are independent of any sales transaction – so the mere sale of BAS product(s) cannot give rise to personal jurisdiction for Plaintiff's claims.

Because Plaintiff has failed to plead any plausible basis for this Court to exercise jurisdiction over BAS, Defendant respectfully asks that the Court grant Defendant BAS' motion to dismiss pursuant to Rule 12(b)(2) as to all of Plaintiff's claims, and grant BAS such other relief, in law or in equity, to which it may justly be entitled.

## MOTION TO COMPEL ARBITRATION AND STAY PURSUANT TO THE FEDERAL ARBITRATION ACT

To the extent BAS' Motion to Dismiss pursuant to Rule 12(b)(2) does not dispose of all Plaintiff's claims, BAS respectfully moves the Court to compel Plaintiff Raskin to arbitration pursuant to the binding and enforceable agreement contained in the EasyCanvasPrints.com Terms of Service, and to stay this litigation pending the outcome of that arbitration pursuant to Section 3 of the Federal Arbitration Act.

Plaintiff Raskin asserts three causes of action under D.C.'s Consumer Protection Procedures Act ("CPPA") against Austin-based online retailer BAS, based on BAS' alleged method of advertising product prices for its nationwide e-commerce sites. *See* Complaint ¶¶ 44, 49, 53, 56. As the basis for his claims, Plaintiff pleads that when he and other D.C. consumers browse the internet and receive mass-marketing emails, they are injured by "exposure" to BAS' pricing, and that Plaintiff completed a single purchase transaction through one of BAS storefronts, EasyCanvasPrints.com.[4] Importantly, as part of this purchase transaction, Plaintiff agreed to a set of published "Terms and Conditions" ("Terms") containing a binding arbitration clause, which mandates that "[a]ll disputes arising out of, relating to or connected with" Plaintiff's transaction must "be exclusively resolved under confidential binding arbitration held in Travis County, Texas."

As explained in BAS' Motion to Dismiss, pursuant to D.C.'s long-arm statute, personal jurisdiction does not attach to Texas-based BAS in this forum *for any* of Plaintiff's causes of action.

---

[4] As noted in the Motion to Dismiss, *see* Parts I.C and III.B, the Complaint insists that Plaintiff's causes of action do not depend upon this or any other purchase. Plaintiff pleads that the alleged violations consist of BAS setting and publishing its "pricing scheme," which Plaintiff admits are activities undertaken in Texas, not the District of Columbia—and that the purported statutory violations are complete the moment consumers encounter BAS' pricing information. Plaintiff thus establishes that his claims *do not* arise out of any business transactions by BAS in this forum, which means D.C.'s long-arm statute does not confer jurisdiction over BAS for Plaintiff's claims.

However, to the extent this Court might exercise jurisdiction over BAS for any of Plaintiff's claims, the Federal Arbitration Act requires that Plaintiff resolve such claims—including the threshold question of whether and to what extent his claims are subject to mandatory arbitration—through arbitration pursuant to the EasyCanvasPrints.com Terms, with this litigation stayed pending the outcome of that arbitration.

Accordingly, as to any of Plaintiff's claims that survive BAS' Rule 12(b)(2) Motion to Dismiss, BAS files this Motion to Compel Arbitration pursuant to the Federal Arbitration Act, and respectfully requests an order (a) requiring Plaintiff to pursue his claims through arbitration pursuant to the parties' written agreement; and (b) staying this litigation pending the outcome of that arbitration.

## I.    Factual Background

On June 5, 2026, Plaintiff Raskin filed suit against BAS in the District of Columbia's superior court, alleging that BAS' online pricing displays mislead consumers in violation of the District of Columbia's consumer protection statute.  *See generally,* Complaint.  On July 10, 2026, BAS timely removed to federal court, and as its first responsive pleading, timely files this combined Motion, seeking dismissal under Rule 12(b)(2) for lack of personal jurisdiction in this forum, and as to any causes of action that may survive dismissal, an order compelling arbitration and staying this litigation pending the outcome of that arbitration.

### A. The Complaint's pleading of a single customer purchase from one BAS storefront confirms Plaintiff's assent to EasyCanvasPrints.com's Terms.

Plaintiff's Complaint pleads a single consumer purchase transacted through one BAS e-commerce storefront, averring that on or about November 9, 2025, Plaintiff Raskin, while in the District of Columbia, ordered one canvas print at EasyCanvasPrints.com for a total price of $80.10 (including tax and shipping), for delivery to an address in D.C.  *See* Complaint ¶¶ 6, 28.

20

Though it disputes the legal effect of Plaintiff's actions, the Complaint admits the facts that prove Plaintiff assented to EasyCanvasPrints.com's published Terms and Conditions (the "Terms") when he placed his order.  *See id.*  Plaintiff pleads that, when he completed his "November 9, 2025 transaction on EasyCanvasPrints.com, . . .  notice of [the Terms] appeared as a . . . sentence at the bottom of the checkout page stating that 'By clicking Secure Checkout you agree to our Terms and Conditions,' with the words 'Terms and Conditions' rendered as a hyperlink to a separate page." *Id.* at ¶ 28. As the following screenshot from the EasyCanvasPrints.com checkout page demonstrates, the Complaint's description matches the layout of EasyCanvasPrint's checkout page – with the notification appearing at the "bottom of the checkout page" ***immediately adjacent to*** the "Secure Checkout" button the consumer must click if he wishes to proceed with the transaction on the proffered Terms:



*See id. See* Exhibit 1 to the Novak Decl. (attaching a true and correct copy of the EasyCanvasPrints.com checkout page). Importantly, as this image shows, the notification's

placement at the "bottom of the checkout page" does *not* make it hidden or obscure, but instead locates it in the immediate vicinity of the "Secure Checkout" button.  The entire notification is rendered in boldface type, with the hyperlinked words "Terms and Conditions" bolded *and* presented in an eye-catching, hot pink font that creates a visual link to the similarly-hued "Secure Checkout" button the consumer must click to proceed.  *See id.*

Finally, although Plaintiff complains at length about the way BAS' various e-commerce sites, including EasyCanvasPrints.com, present their terms of service to customers, Plaintiff nowhere disputes that, at the time he admittedly clicked "Secure Checkout" and completed his purchase, Plaintiff had actually seen EasyCanvasPrint.com's notification, had had the opportunity to review the Terms, and was aware that, by clicking the button, he would be effecting his assent to the Terms as presented on EasyCanvasPrints.com's hyperlinked web page.  *See id.* at ¶¶ 6, 28.

Simply put, presented with the notification—conspicuously placed right next to the "Secure Checkout" button—that clicking the button meant he was agreeing to the Terms, Plaintiff admits he clicked.  *See id.*  In the words of the Complaint, Plaintiff gave "affirmative manifestation of assent to those terms" by "completing the purchase itself."  *See id.* at ¶ 28.[5]

### B. Plaintiff adopted Terms containing a binding and enforceable arbitration provision, which requires resolution of this dispute through arbitration in Austin, Texas pursuant to the AAA rules.

As the Complaint avers, the words "Terms and Conditions" in the notification were (and are) hyperlinked to a separate webpage, https://www.easycanvasprints.com/termsofuse, that presents the EasyCanvasPrint.com "Terms of Sale" and "Terms of Service."  *See id.* (reporting that

---

[5] In fact, Plaintiff assented to the EasyCanvasPrints.com Terms and Conditions for a second reason, independent of his purchase: the Terms provide that "Use of the EASY CANVAS PRINTS™ Web Site constitutes acceptance of these TOS," and Plaintiff admits he used the website.  *See* Complaint ¶¶ 6, 14.

"the words 'Terms and Conditions' [were] rendered as a hyperlink to a separate page"); *see also*

Exhibit 2 to the Novak Decl. ¶ 5 (a true and correct copy of the Terms posted at

https://www.easycanvasprints.com/termsofuse). The opening paragraph of the Terms of Service

explains:

> The following Terms of Service ("TOS") contain the terms that govern your use of the Web Site and EasyCanvasPrints.com™ Service (as defined below). These TOS describe your rights and responsibilities and what you can expect from the EASY CANVAS PRINTS™ Service. ***Use of the EASY CANVAS PRINTS™ Web Site constitutes acceptance of these TOS.***

*See* Ex. 2 at 2 (emphasis added).

Paragraph 12 of the Terms of Service is a binding arbitration provision containing the

following key terms:

- "All disputes arising out of, relating to or connected with these TOS or your use of any part of the EasyCanvasPrints.com Service will be exclusively resolved under confidential binding arbitration held in Travis County, Texas before and in accordance with the Rules of the American Arbitration Association, by a sole arbitrator applying Texas law (without regard for conflicts of law principles)."

- "The arbitrator's award will be binding and may be entered as a judgment in any court of competent jurisdiction."

- "Any action to enforce an arbitrator's award will be brought exclusively in a federal or state court located in Travis County, Texas."

- "By agreeing that arbitration is the exclusive remedy, you are waiving your right to sue EASY CANVAS PRINTS in a court of law or have a jury resolve any dispute that arises out of, relates to or is connected with these TOS or your use of any part of the EasyCanvasPrints.com Service."

*Id.* at 5.

## II.    <u>Argument and Authorities</u>

"Section 2 of the Federal Arbitration Act (FAA) makes agreements to arbitrate 'valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation

of any contract.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (quoting 9 U.S.C.

§ 2).  Under FAA Section 4, "a party 'aggrieved' by the failure of another party 'to arbitrate under a written agreement for arbitration' may petition a federal court 'for an order directing that such arbitration proceed in the manner provided for in such agreement." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 4).  Courts in this District consider a "motion to compel arbitration under the summary judgment standard of Federal Rule of Civil Procedure 56(c), as if it were a request for summary disposition of the issue" of arbitrability.  *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008) (internal citations and quotations omitted).

In the instant case, controlling D.C. Circuit precedent applied to undisputed facts establishes that Plaintiff "agreed to arbitrate his claims against [BAS] because he had reasonable notice of the Terms of Service and the arbitration clause therein."  *Selden v. Airbnb, Inc.*, 4 F.4th 148, 155 (D.C. Cir. 2021).[6]  Furthermore, the United States Supreme Court has confirmed that as part of an arbitration contract, parties can "agree to have an arbitrator decide . . . 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy," and courts must enforce this agreement *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019).  Binding D.C. Circuit precedent confirms that "by incorporating the AAA rules" into the Terms, "the parties clearly and unmistakably delegated arbitrability questions to the arbitrator," and thus this Court "possesses no

---

[6] "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts. *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, (1995).  In this case, Plaintiff argues that the contract was formed from his location in the District of Columbia, while BAS is located in Texas and the contract itself contains a Texas choice-of-law provision.  Because the material governing law is the same in both jurisdictions, rather than digressing into this choice-of-law issue, BAS has offered authority from the District where this Court is located and stands ready to provide Texas authority should Plaintiff contend that Texas law applies pursuant to the contract.

24

power to decide the arbitrability issue" itself. *Commc'ns Workers of Am. v. AT&T Inc.*, 6 F.4th 1344, 1347-48 (D.C. Cir. 2021).

Accordingly, to the extent any claims survive BAS' 12(b)(2) Motion to Dismiss, this Court must compel the parties to arbitration—to resolve any questions of arbitrability as well as the substance of this dispute—and, pending the outcome of that arbitration, order this action stayed pursuant to FAA Section 3.

### A. Plaintiff assented to the Terms, and formed a valid and enforceable contract, when he clicked the "Secure Checkout" button.

Plaintiff Raskin admits that he completed an order through EasyCanvasPrints.com's e-commerce storefront, and that as part of that purchase, he was presented a notification stating "'By clicking Secure Checkout you agree to our Terms and Conditions,' with the words 'Terms and Conditions' rendered as a hyperlink to a separate page"—after which he clicked "Secure Checkout" Complaint ¶¶ 6, 28. Although the Complaint insinuates that the notice that clicking would accept the Terms was obscure or hidden, or otherwise insufficient to provide Plaintiff adequate notice of legal effect of clicking "Secure Checkout," binding D.C. Circuit precedent squarely rejects this theory.

In its seminal *Selden v. Airbnb* opinion, the D.C. Circuit Court of Appeals addressed a factual scenario remarkably similar the instant case, and held that the plaintiff's claims must be arbitrated pursuant to an arbitration clause included in the defendants' online Terms of Service. 4 F.4th at 155. In *Selden,* the defendant argued that by clicking a button labelled "Sign Up" on the defendant's website, the plaintiff had entered into a binding arbitration agreement, because the button was located just above a notification sentence stating that clicking would convey the plaintiff's agreement to the defendant's hyperlinked Terms of Service. *See id*. The plaintiff

25

insisted he had not been given "reasonable notice and therefore never agreed to the arbitration clause within the Terms of Service." *Id.* at 157.

To determine whether the plaintiff had assented to the hyperlinked Terms of Service, the court engaged in a detailed factual analysis of the "layout and language of the site," which—as the two screenshots below demonstrate—was nearly identical to the one at issue in this case. *See id.* at 156-59.




*See Selden*, 4 F.4th at 152 (J.A. 321).        *See* Ex. 1.

The *Selden* court analyzed the key features of this display in minute detail, including the number of buttons, font and font size, color of the hyperlinks, and proximity of the notification to the legally operative button the plaintiff clicked—and held that the plaintiff had entered into a binding agreement "to arbitrate his claims against Airbnb because he had reasonable notice of the Terms of Service and the arbitration clause therein." *Selden*, 4 F.4th at 155. The court concluded that under the FAA, the district court was required to enforce the parties' agreement to arbitrate, and accordingly affirmed its order requiring plaintiff to resolve all his claims through arbitration, not litigation. *Id.* at 162.

The remarkable factual parallel between *Selden* and the undisputed facts in the instant case easily resolves what otherwise would be a "fact-intensive inquiry": BAS' website gave Plaintiff Raskin objectively reasonable notice that clicking on the "Secure Checkout" button would effect his assent to the Terms, including the arbitration provision. *See id.* at 155; *see also Gambo v. Lyft, Inc.*, 642 F. Supp. 3d 46, 54-55 (D.D.C. 2022) (holding that a similar display, including a notice with "a bold colored hyperlink—in bright pink in this case—to the relevant terms and conditions" provided "reasonable notice that a click [would] manifest assent to an agreement" (quoting *Selden*, at 156). Furthermore, while the Complaint describes BAS' checkout page in detail and admits that Raskin clicked "Secure Checkout," Plaintiff never even suggests that at the time he completed his transaction, he was in fact unaware of the EasyCanvasPrints.com Terms, their contents, or that clicking on "Secure Checkout" would effect his assent to them. *See* Complaint ¶ 28.

In sum, Plaintiff Raskin assented to arbitration provision contained in the EasyCanvasPrint.com Terms, and this Court must enforce the parties' agreement to arbitrate, rather than litigate, Plaintiff's claims.

### B. Because the Terms incorporate the AAA rules, the parties' Agreement delegates all questions of arbitrability to the Arbitrator, not this Court.

Controlling authority also squarely establishes that the arbitration agreement between Plaintiff and BAS requires that an arbitrator—not this Court—decide any questions concerning the arbitrability of Plaintiff's claims, including any challenges to the existence, scope, or validity of the arbitration agreement. *See Commc'ns Workers*, 6 F.4th at 1348-49.

In *Communications*, the D.C. Circuit Court of Appeals analyzed an arbitration agreement that required certain disputes to "be submitted to arbitration administered by, and ***in accordance with, the rules of the American Arbitration Association*** (AAA)." *Id.* at 1346 (emphasis added). Significantly, the EasyCanvasPrints.com Terms now before this Court contain materially identical

language, requiring disputes to "be exclusively resolved under confidential binding arbitration . . . before and *in accordance with the Rules of the American Arbitration Association*."  *See* Ex. 2 at 5 (emphasis added).

In *Communications*, the D.C. Circuit found that the parties' arbitration agreement incorporated AAA Arbitration Rules, which "in turn provide that "*[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement*" *Commc'ns Workers*, 6 F.4th 1346 (quoting AAA Lab. Arb. R. 3(a)).  Although Plaintiff Raskin has raised a commercial dispute instead of the labor dispute at issue in *Communications*, Rule 7 of the AAA Commercial Arbitration Rules opens with *exactly the same language* analyzed in *Communications*, as follows:

   (a)  *The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement* or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

   (b)  The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. . . .

*See* AAA Commercial Arbitration Rules, Amended and Effective September 1, 2022, *available at* https://www.adr.org/rules-forms-and-fees/commercial/commercial-arbitration-rules-and-mediation-procedures-june-2026) at 15-16 (emphasis added).

Based on this language, the D.C. Circuit definitively held that, because "the parties' agreement delegates threshold questions of arbitrability to an arbitrator":

   The question whether the parties' dispute falls within the contract's arbitration clause, then, is for an arbitrator, not a court, to decide. It follows that the district court lack[s] jurisdiction to determine whether the parties' dispute must be submitted to arbitration.

*Commc'ns Workers*, 6 F.4th at 1346. *See also N-Bar Trade, Inc. v. Amazon.com Servs. LLC*, 807 F. Supp. 3d 11 (D.D.C. 2025).

In sum, under the controlling precedent of this Circuit, to the extent this Court has jurisdiction over BAS, its exercise of that jurisdiction is properly limited to compelling this dispute to arbitration, and staying this litigation pending the outcome of that arbitration.

**C. FAA Section 3 mandates that this litigation "shall" be stayed, pending the outcome of the arbitration.**

"Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court 'shall on application of one of the parties stay the trial of the action until [the] arbitration' has concluded." *Spizzirri*, 601 U.S. at 473-74 (quoting 9 U.S.C. § 3, modifications in original). Just two years ago, in a unanimous opinion, the United States Supreme Court clarified that "[w]hen § 3 says that a court 'shall ... stay' the proceeding," it means that "the court must do so," because "the use of the word "shall" "creates an obligation impervious to judicial discretion." *Id.* at 474 (citations omitted) (holding that 9 U.S.C. § 3's "plain statutory text requires a court to stay the proceeding"). The statutory mandate is unequivocal: "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Id.* at 478.

As explained herein, controlling precedent applied to undisputed facts establishes that the parties agreed to arbitrate—at a minimum—their threshold dispute over the existence, scope, and enforceability of the EasyCanvasPrints.com's arbitration provision. Because BAS, by this Motion, has requested a stay pending arbitration, *Spizzirri* mandates only one possible outcome: "§ 3 of the FAA compels the court to stay th[is] proceeding." *See id.*[7]

---

[7] As noted above, BAS request to compel to arbitration and stay *only* applies to claims that survive BAS' Motion to Dismiss for lack of personal jurisdiction.

29

### III.    Conclusion and Prayer

As explained herein, controlling precedent applied to undisputed facts establishes that Plaintiff agreed to BAS' Terms, including the arbitration provision contained in Section 12 of the Terms of Service, and as a result, the Federal Arbitration Act requires that this Court "shall" compel arbitration—to address both any dispute over arbitrability, as well as the substance of Plaintiff's claims—and stay this federal court action pending the outcome of that arbitration.

Accordingly, as to any of Plaintiff's claims that are not dismissed for lack of personal jurisdiction over BAS in this forum, the Court should grant BAS' motion to compel arbitration, order the parties to arbitration pursuant to the EasyCanvasPrints.com Terms, order this action stayed pending arbitration, and grant BAS such other relief, in law or in equity, to which it may justly be entitled.

Date: July 17, 2026                                Respectfully submitted,

                                                   /s/ *Michael Weitzner*
                                                   Michael Weitzner, DC Bar No. 472505
                                                   MICHAEL WEITZNER, ATTORNEY AT LAW
                                                   4916 Brandywine Street, NW
                                                   Washington, DC 20016
                                                   202-905-1172
                                                   mweitzner@weitznerlaw.com

                                                   Ryan A. Botkin
                                                   *Pro Hac Vice Motion Forthcoming*
                                                   State Bar No. 00793366
                                                   ryan@bccaustin.com
                                                   Jennifer Rappoport
                                                   *Pro Hac Vice Motion Forthcoming*
                                                   State Bar No. 24072761
                                                   jennifer@bccaustin.com

                                                   BOTKIN CHIARELLO CALAF PLLC
                                                   1209 Nueces Street
                                                   Austin, Texas 78701

30

(512) 615-2341 office
(737) 289-4695 facsimile
Attorneys for Defendant Build A Sign LLC

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 16, 2026, counsel for BAS conferred by telephone with counsel for Plaintiff regarding the relief sought in BAS' Motion to Compel Arbitration and Stay Pursuant to the FAA, in an attempt to narrow the issues before the Court. Plaintiff's counsel indicated that they are opposed to arbitration and to a stay, and we were unable to reach an agreement on this issue.

/s/ *Michael Weitzner*
Michael Weitzner

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, a true and correct copy of this document was served upon the Plaintiff via the Court's electronic filing system.

/s/ *Michael Weitzner*
Michael Weitzner