**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| EVAN RASKIN, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 26-2428 (SLS) |
| | § | |
| BUILD A SIGN LLC, | § | |
| | § | |
| *Defendant.* | § | |

**<u>DEFENDANT BUILD A SIGN LLC'S COMBINED REPLY MEMORANDUM IN
SUPPORT OF ITS RULE 12(b)(2) MOTION TO DISMISS, AND MOTION TO COMPEL
ARBITRATION AND STAY PURSUANT TO THE FAA</u>**

**REPLY IN SUPPORT OF RULE 12(b)(2) MOTION TO DISMISS**

### I.    INTRODUCTION[1]

In response to BAS' Combined Motion to Dismiss and Motion to Compel Arbitration and Stay ("Motion"), Plaintiff Raskin issues twin invitations to this Court to rewrite the law of this Circuit, to (1) effectively eliminate the traditional geographical bounds on personal jurisdiction over e-commerce retailers, and (2) cabin the reach of the FAA with the formalistic requirement that online arbitration contracts are unenforceable unless the identical hyperlinked words that lead to the display of the contract's terms are repeated word-for-word in a title at the top of the contract. For the reasons explained in BAS' Motion and herein, the Court should decline these invitations.

Raskin's complaint alleges three statutory claims, all arising from the District of Columbia Consumer Protection Procedures Act ("CPPA"). It is undisputed that BAS is not a D.C. resident. BAS is connected to this forum *solely* by virtue of its activities as a nationwide online retailer, and Raskin's own conduct. Because this is insufficient to confer personal jurisdiction over BAS in Plaintiff's home forum, he seeks to expand established law in three equally unprecedented ways.

First, Plaintiff proposes an entirely novel and unsupported rule that D.C.'s long-arm statute confers jurisdiction over an out-of-state defendant engaged in non-targeted, nationwide advertising *unless* the defendant *proactively avoids* reaching D.C. consumers.

Second, Plaintiff wrongly claims that evidence that D.C. consumers received BAS' advertising proves that BAS transacted relevant business in the District, but controlling precedent

---

[1] Plaintiff's Response improperly includes arguments addressing Plaintiff's separate motion for remand now pending before this Court. Because these arguments are outside the scope of Defendant's Motions, they are not properly before the Court. In accordance with the orderly presentation of issues in this litigation, this Reply addresses only Plaintiff's response to BAS' Motions; BAS reserves the right to address Plaintiff's remand arguments to the extent they are presented in the separate proceedings on that issue.

requires proof that a nonresident deliberately *targeted* D.C. consumers, as opposed to just serving them the exact same advertising it sends to consumers in every forum nationwide.

Finally, for the same reason, evidence that BAS' advertising appeared when a legal intern ran a Google search with the user location set to D.C. is immaterial to the jurisdictional analysis, because it says nothing about whether BAS was *targeting* D.C., as opposed to just presenting its advertising without regard to internet users' physical locations. As a result, Plaintiff offers nothing more than unsupported conjecture to counter BAS' sworn testimony that it *does not* engage in any geographically-targeted advertising related to the District.

The other distinctions, arguments and novel theories Plaintiff presents in his opposition are mere distractions from the fact that settled law squarely rejects Raskin's attempt to hale an out-of-District defendant before this Court based solely on his *own* residence and activities in this forum.

## II.     ARGUMENT

Though Plaintiff need only make a *prima facie* showing of jurisdictional facts, he has failed to meet even this low bar: Plaintiff's pleading and Response establish that he has not, and cannot, allege specific facts that would confer long-arm jurisdiction over BAS in the District of Columbia for statutory false advertising claims. *See* Response (Dkt. 13) at 6 (citing *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021)).

### A.     Plaintiff's Complaint and Response confirm that BAS' sales transactions are immaterial to the jurisdictional inquiry.

Plaintiff cannot rely on the sole BAS transaction he has pleaded—or any other allegations of BAS sales activity—to establish personal jurisdiction over Defendant in this forum for at least three reasons. First, Plaintiff's own framing of his claims as wholly divorced from any transaction forecloses any possibility that his claims arise out of any BAS sale into the District, and under the plain language of D.C.'s long arm statute, this places any alleged sales activity outside the scope

2

of business activity that could confer specific jurisdiction for Plaintiff's claims. *See* D.C. Code §

13-423(b) (restricting long-arm jurisdiction to claims arising out of the defendant's specific

business transactions in the District). Second, the singular sale activity Raskin pleads does nothing

to tie BAS to this forum, but instead establishes only that *Plaintiff* undertook activities in the

District: it was *Raskin* who reached out from D.C. to search for BAS' website, placed an online

order with this out-of-state retailer, and paid with a credit card that is billed to a D.C. address,

while Plaintiff admits BAS undertook all of its business activities from its headquarters 1,500 miles

away in Austin, Texas. *See* Motion (Dkt. 10) at 2. Third and finally, the sole transaction Plaintiff

pleads involves *no contacts whatsoever between BAS and the District*. Plaintiff admits that his sole

purchase from any BAS storefront was *shipped to Chicago, not D.C.* Raskin Decl. (Dkt. 13-2) ¶ 6

(averring that when he placed his sole order through a BAS storefront, Raskin "directed the print

to be shipped to a friend in Chicago, Illinois"). For all of these reasons, any evidence or discussion

of BAS sales activity is entirely immaterial to the jurisdictional analysis.

Plaintiff's invocation of *Safex Foundation, Inc. v. Safeth, Ltd.*, 538 F. Supp. 3d 1, 8-10

(D.D.C. 2021) changes nothing: in that case, the defendant actually sold products into D.C., and

the plaintiff's cause of action arose from that business activity in the District because the defendant

allegedly violated the plaintiff's trademark by selling the product. *See* Response (Dkt. 13) at 10.

The instant case could not be farther from those facts: Plaintiff admits BAS *did not send its product

into the District*, and furthermore, Plaintiff specifically avers that his cause of action *does not arise

out of that sale.*[2]  The Response reaffirms Complaint's insistence that Plaintiffs' claims are entirely

independent of any sale—making any BAS sales irrelevant to the jurisdictional analysis.

---

[2] Plaintiff misconstrues BAS' passing reference to the tiny fraction of its transactions with any connection
to D.C. addresses. Response (Dkt. 13) at 8.  BAS explicitly clarified that this information is in fact not

3

Plaintiff's Response misstates BAS' position: BAS has never proposed or presumed "that only a consummated sale counts as business transacted in the District." Response (Dkt. 13) at 10. Instead, BAS correctly states that under D.C.'s long-arm statute, claims such as Plaintiff's—which are expressly divorced from any actual sale—cannot rely on evidence of any BAS transaction to establish the requisite jurisdictional contacts, because D.C. Code § 13-423(b) limits the statute's jurisdictional reach to *only* claims "arising out of" the business actually transacted in D.C.[3] The Response eliminates any doubt that Plaintiff pleads claims that arise independent of any sale, *e.g.*:

- "The transacted business on which Plaintiff relies is Defendant's District-directed solicitation." Response (Dkt. 13) at 12.

- "Each count rests on the same two representations, a struck-through 'regular' price that was never the prevailing price and the perpetual discount computed from it." *Id.* at 11.

- "[T]he false discount advertising is not merely connected to Mr. Raskin's claims, they are the subject of his claims." *Id.* at 9.

- "Defendant's challenged action is the purchase and delivery of advertising into this District." *Id.*

- "[E]ach of Mr. Raskin's three counts challenges representations communicated through that same District-directed solicitation." *Id.* at 11.

- "Mr. Raskin's completed purchase is further evidence of that solicitation and of its success, but it is not the sole hook on which jurisdiction depends." *Id.* at 10.

Finally, Plaintiff's acceptance of BAS' Terms when he made his purchase forecloses *any* possibility that Plaintiff could use his transaction to establish this Court's jurisdiction over BAS.

---

material to the jurisdictional analysis, but instead just confirms that BAS' nationwide retail business only incidentally reaches into this forum, rather than reflecting deliberate targeting of the District. Motion (Dkt. 10) at 4 n.1.

[3] The question of putative class members' jurisdictional contacts is premature, but even were it before the Court, Plaintiff cannot insist that his claims arise *independent of* any transaction, then establish jurisdiction based on the self-contradictory assertion that his claims supposedly "arise out of [hypothetical] completed sales" to an as-yet unidentified subset of potential plaintiffs "that Defendant [theoretically] solicited, accepted, and billed to District addresses." *See* Response (Dkt. 13) at 10–11.

As noted above, Plaintiff's transaction could only subject BAS to jurisdiction in this forum if Plaintiff's claims arise out of that transaction, but if and to the extent that any of Plaintiff's claims *did* arise out of that transaction, those claims must be arbitrated pursuant to the agreement Plaintiff entered when he made his purchase. *See* Motion (Dkt. 10) at 25–27. Either way, Plaintiff cannot rely on BAS' alleged sale(s) to establish personal jurisdiction in this forum.

**B.    BAS' marketing activities cannot provide the requisite jurisdictional contacts because BAS' advertising does <u>not</u> discriminate among consumers based on geographic location.**

Because Plaintiff pleads only claims arising out of BAS' alleged false advertising, Plaintiff's burden to establish personal jurisdiction requires a showing that BAS has engaged in advertising activity that is specifically directed *at the District*. Controlling D.C. Circuit precedent establishes that merely paying for advertising *that is not targeted at any specific forum* is *not* enough to confer specific jurisdiction over a nonresident defendant. BAS offered a sworn declaration that its advertising does *not* discriminate based on a consumer's geographic location. That is the end of the matter; Plaintiff's unsupported speculation that BAS *might* engage in geographic targeting offers nothing to defeat BAS' motion to dismiss.

   *1.    D.C. law is clear: paid advertising that reaches D.C. consumers <u>only</u> confers jurisdiction if it specifically targeted this forum in particular – nationwide advertising that happens to enter D.C. is jurisdictionally immaterial.*

Plaintiff's assertion that "[c]ontrolling District law establishes that a nonresident transacts business here when it directs advertising into the District to solicit District residents as customers, even if it has no District premises, places its advertising from outside the District, and delivers its goods elsewhere" patently misstates the law. Response (Dkt. 13) at 7. Settled law—including the very cases Plaintiff cites—requires that a non-resident defendant must *target* the District with its advertising before jurisdiction can attach on this basis; nationwide, geographically non-specific

advertising that happens to reach D.C. consumers has no bearing whatsoever on the jurisdiction analysis.

Plaintiff's discussion of *Shoppers* is inapposite because it elides this essential distinction. *See* Response (Dkt. 13) at 7-9 (drawing a false parallel between *Shoppers*, 746 A.2d at 336, wherein the defendant actively "directed [its] advertising" into the District, and the instant case, in which BAS' geographically nonspecific, nationwide advertising reaches the District exactly as it reaches every other forum in the nation). Plaintiff entirely overlooks the *Shoppers* court's dispositive analysis that concluded that the defendant in that case—a brick-and-mortar retailer with stores just outside the D.C. border—had "purposefully and deliberately solicited District residents" *in particular* "for its nearby Maryland and Virginia stores" including through "extensive advertising activity" "in the District's major circulation newspaper." *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 336 (D.C. 2000); *id* at 332. Similarly, in *Heroes*—the only other case Plaintiff cites on this point—the court emphasized the dispositive fact that the defendant's "advertisement [had been] placed specifically in the forum's local newspaper, not in a national newspaper or trade publication which happens to circulate there. This distinction is significant." *Heroes, Inc. v. Heroes Found.*, 958 F. Supp. 1, 3 (D.D.C. 1996) (finding personal jurisdiction based on this selective targeting of the D.C. forum and declining to decide whether the defendant's internet presence "by itself subjects the defendant to personal jurisdiction in the District"). *Id.* at 5.

This distinction between a defendant targeting advertising at D.C. *in particular* and advertising generally to a nationwide audience is not BAS' invention: *Shoppers* and its progeny establish this as essential material question that governs the outcome of the jurisdictional analysis. Far from supporting Plaintiff's claim that *any* advertising into D.C. establishes personal jurisdiction, *Shoppers* establishes precisely the opposite: BAS' advertising into D.C. *cannot* confer

6

personal jurisdiction *unless* BAS was actively and deliberately targeting D.C. consumers in particular.[4]

Indeed, *Shoppers* itself explicitly anticipated, and rejected, Raskin's attempt to leverage the Court's holding to establish "'virtually unlimited jurisdiction in the District over businesses and claims with little or no relationship to the District.'" In addressing the "spectre" of this impermissible outcome, the *Shoppers* court emphasized the "different factual situation from the one before us" that would be presented if a plaintiff—like Raskin—tried to establish personal jurisdiction based on "non-directed Internet advertising" into D.C. *Shoppers*, 746 A.2d at 336-337 (citing *E–Data Corp. v. Micropatent Corp.*, 989 F.Supp. 173, 177 (D.Conn. 1997), and describing its holding that a "defendant's Internet advertising . . . was insufficient as a basis for personal jurisdiction because 'hundreds of thousands of Web sites [existed] on the Internet'")).

> 2.      *The Response argues only that BAS' advertising <u>reached</u> D.C., while offering nothing to establish the material element of whether the advertising was specifically <u>targeted</u> at D.C.*

As just explained, BAS' advertising could only establish personal jurisdiction if BAS were to advertise to D.C. consumers in a way that distinguishes them from the rest of BAS' nationwide customer base. As BAS' declaration confirms, BAS simply does not engage in any such advertising. Unable to offer *anything* to the contrary, Plaintiff tries to distract from the absence of

---

[4] Plaintiff's pronouncement that *Shoppers* held that "[s]oliciting District residents with advertisements is transacting business here if sufficient nexus is established" turns the law on its head. *See* Response (Dkt. 13) at 10-11.  Under Plaintiff's bizarre theory, regardless of whether a defendant's out-of-state marketing activity actually meets the legal definition of "transacting any business in the District," Plaintiff can unilaterally cause jurisdiction to attach by pleading claims that have a close enough "nexus" to Defendant's out-of-state activity.  Neither *Shoppers* nor any other legal authority supports Plaintiff's premise that personal jurisdiction attaches based on the proximity between Plaintiff's claims and the defendant's actions, as opposed to arising out of a connection between the defendant and this forum.

material jurisdictional contacts by repeatedly—and irrelevantly—arguing that BAS' advertising merely *reaches* D.C., including asserting the following:

- "Defendant purchased sponsored placement in Google search results served to consumers searching from the District," Response (Dkt. 13) at 7;

- "Paying a search engine to place a false discount claim before a consumer searching from the District is solicitation directed into the District," *id*.;

- "Defendant paid to place its discount claims in front of consumers searching from the District, sends those same discount claims by email to individuals that its own records indicate reside in the District, and it sells its products and services based on its false discounts to District customers . . . ," *id*. at 2;

- BAS "did not passively maintain a site that District residents happened to find. It paid to put its discount claims in front of them, it sent those claims to their inboxes, and it accepted their orders and took their money," *id*. at 2;

- BAS made "an admission that Defendant sells to District customers," *id.* at 8;

- "Defendant built and maintains its marketing list, its own records identify which of its addresses are in the District, and it chooses to keep sending the emails," *id* at 8;

- "Defendant paid to reach consumers here and then sold its products and services to Mr. Raskin by making false claims about discounted pricing," *id* at 9.

These points are universally immaterial to the jurisdictional analysis, because even if true, these activities are fully consistent with BAS engaging exclusively in geographically nonspecific, nationwide marketing activities.[5]  Plaintiff offers nothing to suggest that BAS *targets* D.C. residents, *i.e.* differentiates its advertising between D.C. residents and consumers in other fora. Accordingly, Plaintiff has offered *nothing* relevant to the essential material element Plaintiff must prove to establish personal jurisdiction based on BAS' advertising activities.

---

[5] The Response fails to rebut BAS' point that Plaintiff has not even alleged that BAS "does anything to specifically target D.C. consumers," because it once again fails to distinguish between activities that differentially target this forum, and advertising that is "directed . . . at the District of Columbia," "accessible to" District consumers, or is "targeting" the District *equally with all other jurisdictions*. *See* Response (Dkt. 13) at 8 n.2.  Only the former can establish personal jurisdiction in this forum, but Plaintiff pleads only the latter.

> 3.    *BAS' failure to exclude District residents from indiscriminate nationwide advertising does <u>not</u> constitute "transacting any business in the District" under governing law.*

Plaintiff's invitation to rewrite the District's law does not stop at his proposal to strike the "targeting" requirement out of the long-arm analysis; he also proposes a brand new rule that a nonresident defendant transacts business in D.C. if it *fails to proactively exclude* D.C. from an otherwise geographically non-specific nationwide advertising campaign. [6] Plaintiff offers not a single legal authority to support this novel legal theory – nor could he, because the premise that a party can transact business so as to subject itself to jurisdiction in a foreign forum simply by *failing to act* is patently incompatible with both D.C.'s long-arm statute and the due process requirements of the U.S. Constitution.

> 4.    *Plaintiff's proffered evidence that a Google search specifying a consumer location in D.C. returned BAS' advertising is immaterial to the jurisdictional analysis.*

Faced with BAS' uncontroverted evidence that it does not target this forum with advertising in any way that could confer personal jurisdiction, Plaintiff falsely claims that the fact that "Defendant's paid, sponsored listing appeared on a Google search [supposedly] localized to the District" means BAS' sworn testimony that its advertising does not specifically target D.C. is "contradicted by the present record." *See* Response at 15. Plaintiff mischaracterizes both the Google search at issue, and its implications.

In fact, the search Plaintiff describes was *not* "localized to the District" at all: nothing about the search parameters *limited* the results to geographically-targeted advertising. Instead the intern

---

[6] Plaintiff also floats another entirely novel legal proposition, suggesting that it matters whether Plaintiff's claims "depend[] upon conduct confined to Austin." Response (Dkt. 13) at 11. Once again, Plaintiff's argument is pure distraction: the jurisdictional inquiry examines the defendants' contacts with *this* forum, not the extent to which its business activities are "confined" to any particular forum elsewhere.

working for Plaintiff's attorney merely set search parameters that identified the searcher as being located in the District – without applying any screen that would require the resulting advertising to pay any attention to that setting. In other words, nothing about Plaintiff's lawyer's intern's search tested whether BAS was using the consumer's location as a parameter in deciding whether and how to advertise, or was just delivering the same ads regardless of the location setting. Because the search was not *restricted* to ads that were set to target only District residents, which is the only material question at issue, all that can be concluded from this proffered evidence is that BAS distributes advertising that *does not exclude* D.C. residents – a question that is entirely irrelevant to the jurisdictional inquiry. Plaintiff's proffered evidence proves nothing.

        5.      *Plaintiff still offers nothing but <u>his own</u> contacts to the District, which cannot establish personal jurisdiction over a non-resident Defendant.*

Plaintiff admits that the proper jurisdictional inquiry asks where the defendant undertook the challenged business actions. *See* Response (Dkt. 13) at 9. Here, the answer to this dispositive question is fatal to Plaintiff's claims, so Plaintiff ignores the law, and argues instead that his own relationship to D.C. somehow establishes jurisdiction over BAS in this forum. It does not.

As BAS explained in its Motion, Plaintiff's jurisdictional allegations reduce to the claim that Plaintiff, while in the District, viewed advertising that was equally accessible from every forum in the nation, but Plaintiff happened to be located in D.C. at the time he viewed it. *See* Motion (Dkt. 10) at 14-16. These are Plaintiff's jurisdictional contacts, not Defendant's, and thus do nothing to establish jurisdiction over BAS in this forum.

**C.     Plaintiff cannot avoid governing legal precedent by highlighting immaterial differences in factual details.**

Because the governing law of this Circuit is fatal to his claims, Plaintiff attempts to distinguish the authorities BAS cites with a serial recitation of various purported factual differences between those cases and the facts of the instant case. Response (Dkt. 13) at 12-14.

Even were Plaintiff's descriptions of these cases and the instant facts accurate (they largely are not), the deviations he highlights in no way make these cases inapposite *for the legal premises for which they are cited*.

*Forras*, like the instant lawsuit, involved a defendant whose out of the District's internet activities impacted District residents in ways that the Plaintiff claimed established personal jurisdiction in this forum. *See Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016). Bizarrely, Plaintiff attempts to link the facts of the instant case to the *Forras* court's analysis of D.C. Code § 13-423 subsection (a)(4)—which reaches only claims pleading *tortious conduct*, and thus could not possibly apply here—while ignoring *Forras*' discussion of subsection (a)(1), which is the only part of D.C.'s long-arm statute that could possibly confer jurisdiction over Plaintiff's entirely statutory claims. Response (Dkt. 13) at 12-13. The part of Plaintiff's discussion of *Forras* that *is* accurate and on point supports BAS' position: indeed, the *Forras* "court found no District business transacted" notwithstanding the impact of the defendant's internet activities within the District because—just as in the instant case—all of the Defendants' business activities took place outside of D.C. *See id.* at 12.

Plaintiff's attempt to distinguish *GTE* similarly examines the court's inapposite discussion of D.C. Code § 13–423(a)(4), and thus highlights an inquiry into whether defendants were earning revenue that has no relevance to the Subsection (a)(1) that governs the instant case. Response (Dkt. 13) at 13. In contrast, BAS relies on the parts of *GTE* that address the "transacting business in the District" standard that governs the jurisdictional analysis at hand. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000). Furthermore, Plaintiff's assertion that *GTE*, *Hayes*, and *Sinclair* are inapposite because purportedly "[n]one of the defendants in these cases paid to place its content before District consumers, emailed District residents, or sold

11

anything here" again misses the point. Response (Dkt. 13) at 13. As explained herein, none of these cases—nor any other case Plaintiff cites—establishes that *any* of these supposed distinctions are material to the question of whether personal jurisdiction lies in this forum for Plaintiff's statutory false advertising claims.

Finally, Plaintiff's attempt to distinguish *Safex Foundation, Inc. v. SafeLaunch Ventures Ltd.*, 694 F. Supp. 3d 1 (D.D.C. 2023) fails by erroneously reporting that the court's decision was *because* the defendant excluded United States customers—when in fact the court expressly discussed the record evidence showing that U.S. residents in fact *were able to use* the defendant's website. Response (Dkt. 13) at 13-14. In any case, *Safex* remains a representative example of the this court expressing its unwillingness to expand the notion of jurisdictional contacts to the extent that personal jurisdiction could attach based on a defendant's sending non-geographically targeted self-promotional electronic marketing into a forum. *Safex*, 694 F. Supp. 3d at 16; *see* Motion (Dkt. 10) at 16.

### D.    Jurisdictional discovery is entirely unwarranted in this case, and furthermore, the discovery Plaintiff proposes is overbroad and immaterial.

The Court should deny Plaintiff's request for discovery. Because Plaintiff's jurisdictional theories are non-viable, there are simply no material facts that could be produced through discovery that would alter the jurisdictional analysis.

As the D.C. Circuit cautions, "jurisdictional discovery is not a fishing expedition," and should not be granted when—as in the instant case—a plaintiff "has offered nothing more than a jurisdictional theory in search of facts to go with it." *Triple Up Ltd. v. Youku Tudou Inc.*, No. 17-7033, 2018 WL 4440459, at *3 (D.C. Cir. July 17, 2018).  In this case, Plaintiff seeks a broad range of information that is simply immaterial to the inquiry before the Court, but the law is clear that discovery is properly denied "when the additionally discovered facts would not affect the

12

jurisdictional analysis." *See id.* (citing *Mwani v. bin Laden*, 417 F.3d 1, 17 (D.C. Cir. 2005)); *see also Livnat v. Palestinian Auth.*, 851 F.3d 45 (D.C. Cir. 2017) (superseded by statute on other grounds) (holding that "[a] district court acts within its discretion to deny discovery when no facts that additional discovery could produce would affect the jurisdictional analysis"). Because Plaintiff offers no viable jurisdictional theory that discovery could support, jurisdictional discovery is unwarranted, and should be denied in its entirety.

Furthermore, even were jurisdictional discovery not categorically inappropriate in this case, the discovery Plaintiff seeks is a thinly veiled fishing expedition that would not produce any facts that would affect the jurisdictional analysis. Specifically:

a. The request for "Defendant's sales to customers with a District billing or shipping address, by brand and year" is wholly immaterial because Plaintiff himself insists that his claims *do not arise out of any BAS sales*, but instead arise exclusively from BAS' *advertising* activities.

b. The request for "Defendant's advertising directed to the District, including geo-targeted ad spend and audience-targeting parameters" should be denied because BAS has already offered sworn testimony that it *does not* geo-target its advertising at all, and thus there is no discoverable material on this topic.

c. The request to investigate "the number of District recipients on Defendant's marketing-email lists and the volume of emails sent to them" is also irrelevant, invasive, and overbroad because, as explained herein, the information sought is not probative to any relevant inquiry: the mere fact that D.C. residents receive advertising materials sent as part of nationwide, non-geographically targeted marketing campaigns is immaterial to the jurisdictional analysis.

d. The request to investigate "the centralized coordination of Defendant's eleven brands from Austin" is pure fishing that is irrelevant to the jurisdictional analysis, because the sole question before this Court concerns BAS' business activities *in D.C.* – which has nothing to do with the way BAS coordinates its business activities 1,500 miles away in Texas.

e. The requested discovery into "the checkout systems and the terms Defendant contends were in force on November 9, 2025" has no relationship to any question of whether personal jurisdiction attaches to BAS in this forum for Plaintiff's false advertising claims, and thus cannot properly be granted under the guise of jurisdictional discovery.

13

In sum, *none* of Plaintiff's proposed jurisdictional discovery is material to this Court's jurisdictional analysis. The Court should decline Plaintiff's request to burden and harass BAS with an overbroad and irrelevant fishing expedition.

### E. Plaintiff's Hail-Mary attempt to invoke the "tortious injury" subsection of D.C.'s long-arm statute is frivolous.

Faced with BAS' demonstration that personal jurisdiction cannot be established over BAS pursuant to subsection (a)(1) of D.C.'s long-arm statute, Plaintiff for the first time in his Response floats a new theory of long-arm jurisdiction: D.C. Code § 13-423(a)(4). Based on highly misleading, strategically selective quoting, Plaintiff represents to this Court that subsection (a)(4) "supplies an alternative basis for jurisdiction" because it "reaches a defendant who 'regularly does or solicits business,' engages in a 'persistent course of conduct,' *or* 'derives substantial revenue' from the District." Response (Dkt. 13) at 15-16 (emphasis in original). As the complete text of the subsection reveals, Plaintiff's theory is spurious, because Subsection (a)(4) expressly applies *only* to claims arising from a defendant's "***causing tortious injury*** in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4) (emphasis added).

Of course, as Plaintiff squarely admits, the Complaint *exclusively* asserts statutory violations, with no tortious injury whatsoever alleged. *See* Response (Dkt. 13) at 3: "The Complaint pleads material misrepresentation, misleading innuendo, and false price-reduction representations CPPA violations [*sic*] under D.C. Code § 28-3904(e), (f-1), (j)." Because Plaintiff does not even attempt to plead any tortious injury, his invocation of subsection (a)(4) to attempt to

14

avoid dismissal—and to prop up his request for a fishing expedition under the guise of jurisdictional discovery—is patently frivolous.

### III.   CONCLUSION

Plaintiff's Response to BAS' Motion to Dismiss pursuant to Rule 12(b)(2) only confirms that Plaintiff has not, and cannot, meet his burden to establish this Court's personal jurisdiction over BAS for his pleaded claims. Accordingly, Defendant's Motion should be granted in its entirety.

## REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY

### I.    INTRODUCTION

Resolution of BAS' Motion to Compel Arbitration is entirely straightforward: the undisputed facts plainly establish that Plaintiff Raskin, as part of his purchase from BAS' e-commerce storefront, agreed to contractual terms including a provision requiring him to arbitrate—rather than litigate—his claims against BAS. The FAA requires this Court to enforce that agreement, including by deferring to an arbitrator to address any challenges Raskin may assert to the scope, enforceability, or any other aspect of the arbitration agreement.

In Response, Plaintiff raises a series of highly legalistic, technical complaints that attempt to obfuscate the simple, dispositive reality that *the parties agree on all substantive facts* that establish BAS' right to compel arbitration, according to the established law of this Circuit. The undisputed material facts leave no doubt that Plaintiff was given reasonable notice that using BAS' website to place an order would manifest his agreement to be bound by BAS' Terms, including an arbitration agreement, and Plaintiff completed the transaction.[7]  That is the end of the matter. To the extent any of Plaintiff's claims survive BAS' Motion to Dismiss, they must be referred to arbitration, and these proceedings stayed pending the Arbitrator's decision.

### II.    ARGUMENT

**A.    The record proves that Raskin agreed to the BAS Terms of Service containing the arbitration provision.**

BAS has carried its burden to prove that the parties formed a contract containing a mandatory arbitration provision. The parties agree that the Court must first determine whether a

---

[7] This type of acceptance, in which a website user manifests his intent to accept the website's published terms of use by virtue of proceeding with a sign-in or transaction process, is known as "sign-in wrap." *See Williams v. Consumerinfo.com, Inc.*, 2024 WL 5186620, at *5 (D.D.C. Dec. 20, 2024).

contract containing an arbitration provision was formed before referring the remainder of the dispute, including the scope and enforceability of the arbitration clause, to the arbitrator under the arbitration provision's delegation clause. *See* Response (Dkt. 13) at 16. Notwithstanding Plaintiff's attempt to obfuscate the issue, the question of formation is easily resolved as a matter of law, because this case presents no contested facts or tricky legal issues.

The parties agree on all material facts. And the law is clear that Raskin accepted BAS' Terms of Service containing a broad arbitration provision—including a delegation clause—when he placed his order at EasyCanvasPrints.com in November 2025. This is all that is required to trigger this Court's obligation to compel Plaintiff to arbitrate, rather than litigate, his claims.

>    1.    *There are no disputed issues of material fact: the parties' accounts of what Plaintiff encountered when making his single purchase from a BAS storefront are in perfect agreement.*

Deciding BAS' motion to compel arbitration is straightforward because, despite Plaintiff's formalistic complaints, there simply is no material dispute of fact. Plaintiff's Complaint, Response, and associated Declaration establish that when he purchased from EasyCanvasPrints.com, Raskin encountered a "Checkout" page just like the one presented in BAS' Motion.[8]  *See* Response (Dkt. 13) at 18; Raskin Declaration ¶¶ 8, 11.

Specifically, Raskin's declaration confirms that "the EasyCanvasPrints.com screenshots contained in Exhibit B to the Complaint (ECF No. 1-2), including the checkout-page screenshot[,] … fairly and accurately depict the pages as I encountered them in my November 9, 2025 transaction." *Id.* ¶ 11. The screenshot Raskin references appears on page 33 of the Complaint

---

[8] The Response's elaborate critique of BAS' evidentiary submission is a mere formality, as Plaintiff never disputes the *substance* of the evidence, and indeed, proactively confirms all material details needed to establish that an arbitration agreement was formed.

17

(Exhibit B) under the title "EasyCanvasPrints.com—Step 5: Terms of Service." Although black-and-white and grainy, this screenshot exactly matches the images on page 21 of BAS' Motion and Exhibit 1 to the Novak Declaration. Novak Declaration (Dkt. 10-1) ¶ 4, Ex. 1. This confirms that there is no material dispute about the Checkout page's contents or layout; both parties agree the screenshots in BAS' Motion depict what Plaintiff saw when he made his purchase from EasyCanvasPrints.com.

Similarly, despite the Response's extensive formalistic protests, the parties' papers reflect *no disagreement* about the contents of the hyperlinked BAS Terms document at the time Raskin made his purchase—both parties present and discuss *identical* documents. For example, Plaintiff's Response recounts how, when making his purchase in November 2025, Raskin encountered a checkout page "with the words 'Terms and Conditions' hyperlinked" to "a single page . . . containing two separately captioned instruments, a "Terms of Sale" (last revised 2016) and a "Terms of Service" (last revised June 20, 2025)."[9]  Response (Dkt. 13) at 20. This description exactly matches the contract BAS attached as Exhibit 2 to the Novak Declaration and presented in its Motion. *See* Motion (Dkt. 10) at 22-23; Novak Declaration (Dkt. 10-1) ¶ 5, Ex. 2.

Plaintiff's detailed descriptions of the contract he encountered, found in both his Complaint and the Response, reveal no discrepancies with Exhibit 2 to the Novak Declaration. *See* Response (Dkt. 13) at 20 (discussing in detail the document that was hyperlinked when Raskin made his purchase, including confirming that it contained an arbitration clause); Novak Declaration (Dkt. 10-1) ¶ 5, Ex. 2. Far from raising any substantive dispute about the contents of the BAS Terms

---

[9] As Plaintiff's description of the document confirms, not only are the parties' accounts of the contents of the contract entirely in agreement, the contract speaks for itself, confirming that the version attached to BAS' Motion is the same version that was operative when Raskin made his purchase in November of 2025.

document, Plaintiff's Complaint confirms the material facts that the Terms are the relevant contract and that they contain an arbitration provision, by arguing over how BAS might "construe[] its arbitration clause" and attempting to invoke BAS' specific arbitration provision to benefit Plaintiff. Complaint ¶ 59 (arguing that "Defendant's own Terms expressly carve out equitable and injunctive relief from arbitration when sought by Defendant. The same forum must be available to Plaintiff and the putative Class members").

Finally, if any doubt remained, the Response meticulously describes Plaintiff's experience when he "clicked" and "was directed to" the same Terms of Sale and Terms of Service document that the Response attributes to BAS' Motion. *Id.* at 24. The record is clear: there simply is no dispute of fact that Raskin encountered the webpages depicted in Novak Declaration Exhibits 1 and 2 when he made his purchase at EasyCanvasPrints.com.[10]

> 2.     *The sole legal question regarding contract formation is whether the discrepancy between the hyperlinked words "Terms and Conditions" and the titles "Terms of Sale" and "Terms of Service" appearing in the hyperlinked document allows Raskin to avoid the "sign-in wrap" contract that he otherwise would have entered when completing his purchase.*

The parties' substantive dispute over formation of the relevant contract is extremely narrow, because Plaintiff *does not* dispute that he was reasonably notified that he would be accepting a "sign-in wrap" contract if he completed his EasyCanvasPrints.com purchase. *See* Response (Dkt. 13) at 20 ("Plaintiff does not contend the checkout text was hidden"), 22 (arguing that of the two questions relevant to assent, *i.e.*, "whether the notice was reasonably conspicuous,

---

[10] Plaintiff's reliance on a Third Circuit opinion to insist upon a rigid application of the rules of evidence is misplaced, as this Circuit's jurisprudence expressly diverges from the Third Circuit's "in analyzing whether the parties formed an agreement to arbitrate." *See Osvatics v. Lyft, Inc.*, 535 F. Supp. 3d 1, 8 (D.D.C. 2021) (highlighting that D.C. jurisprudence deviates from the Third Circuit's). Plaintiff fails to explain why this Court should place form over substance and insist upon elaborate evidentiary formalities, when the record reflects *no actual dispute* over any substantive material fact.

19

and whether the consumer's action unambiguously manifested assent to identified terms[,] Defendant fails [only] the second"). Plaintiff also does not dispute that he in fact "clicked" and completed the transaction. Thus, Plaintiff's *sole* challenge to formation of the arbitration agreement is his theory that the (undisputed) contents of the hyperlinked "Terms" document were so defective that they obviated an otherwise enforceable "sign-in wrap" agreement. Though it purports to be fact-specific, Plaintiff's argument is easily rejected as a matter of law. Plaintiff's challenge to contract formation fails because none of the minutiae objected to in the Response could have led a reasonably prudent consumer to conclude the sign-in wrap notice's hyperlinked "Terms and Conditions" referred to anything other than the "Terms" in the hyperlinked document.

Plaintiff's central argument turns on the fact that the admittedly reasonably conspicuous sign-in wrap notice hyperlinked the words "Terms and Conditions," but the linked document, rather than using these specific words as a title, contained two sets of (interconnected) provisions under the headings "Terms of Sale" and "Terms of Service" (hereinafter, the "Terms document"). Plaintiff asks this Court to confer extraordinary legal significance on this minor phrasing discrepancy. Although the Terms document *was unambiguously hyperlinked to the notice*, Plaintiff argues that the result of the *exact* hyperlinked words failing to appear at the top of the document is that: "[t]he click was tied to a document that does not exist," Response at 24; the notice does not show intent to make the Terms part of the contract, *id. at* 21; the consumer was not "directed to an identifiable agreement" and thus never had "'an opportunity to read' the contract," *id. at* 24; the contract is an "inherently circular," nonsensical "agreement to be bound by any agreement," *id. at* 21; and ultimately, the notice failed to identify the Terms of Service and Terms of Sale as part of the contract, *id. at* 20—leaving this Court unable to enforce "terms it cannot identify," *id. at* 24.

20

In sum, Plaintiff asks this Court to adopt a novel rule that *any* difference between the exact wording of the notice's hyperlink and the title of the linked document precludes formation of an otherwise enforceable "sign-in wrap" agreement. Even if the hyperlink itself definitively and unambiguously ties the contract document to the sign-in wrap notice, Plaintiff proposes that the lack of *perfect* correspondence between the wording of the hyperlink and the wording of the title causes "a failure of mutual assent at the most basic level" that prevents the formation of any agreement. *Id.* at 23.

Plaintiff's attempt to elevate formalities over substance is unwarranted. Under this Circuit's jurisprudence, Plaintiff's admissions that (a) BAS' checkout page provided reasonable notice that completing the transaction meant assenting to certain "Terms and Conditions," and (b) the phrase "Terms and Conditions" in the notice was hyperlinked to a document presenting BAS' "Terms of Sale" and "Terms of Service" definitively prove contract formation. *See, e.g., Selden v. Airbnb, Inc.*, 4 F.4th 148, 155 (D.C. Cir. 2021). There can be no serious dispute that, under these factual circumstances, any reasonably prudent consumer would conclude that the applicable "Terms and Conditions" were the "Terms of Sale" and "Terms of Service " that were hyperlinked to the words "Terms and Conditions."  The Response's legalistic analysis of the precise correspondence between the document's title and the hyperlink's phrasing has no place in the common-sense contract formation inquiry. The only reasonable conclusion an actual consumer could reach under the undisputed factual circumstances is that the linked "Terms" document contained the "Terms and Conditions" applicable to the sign-in wrap agreement.

21

Plaintiff's proposed rigid, formalistic test for contract formation is unprecedented.[11] Instead of applying bright-line rules to the question of contract formation, "the standard is one of constructive notice which, turns on 'whether reasonable people in the position of the parties would have known about the terms and the conduct that would be required to assent to them.'" *Williams v. Consumerinfo.com, Inc.*, No. 1:24-CV-02017-RCL, 2024 WL 5186620, at *6 (D.D.C. Dec. 20, 2024) (quoting *Selden v. Airbnb, Inc.*, 4 F.4th 148, 156 (D.C. Cir. 2021)). The instant case is not a hard one; this common-sense standard easily disposes of Plaintiff's arguments.

Plaintiff's grab-bag of other complaints about the Terms document does not change this result. As to what Plaintiff calls "two separately captioned instruments" in the single hyperlinked Terms document, the very first paragraph in the document alerts any reasonably prudent consumer in plain language that *both* the Terms of Sale and Terms of Service apply to any transaction onEasyCanvasPrints.com:

> This Terms of Sale is not meant to contradict, violate or run contrary to any portion of the Terms of Service which governs your use of EASY CANVAS PRINTS™ services and your use of the EASY CANVAS PRINTS™ Web Site. If any portion of the Terms of Sale is found to contradict, violate or run contrary to the Terms of

---

[11] Plaintiff blatantly mischaracterizes the precedent he cites to purportedly establish the dispositive nature of the contract title. For example, he claims *Williams v. Consumerinfo.com, Inc.* "enforced [a sign-in wrap] agreement, but *only because* the disclosure named a "Terms of Use Agreement" and the hyperlink opened a document *actually so titled*." Response (Dkt. 13) at 22 (emphasis added), discussing 2024 WL 5186620, at *5-7 (D.D.C. Dec. 20, 2024). Similarly, he asserts that "*Selden* itself enforced an agreement *because* . . . the notice said 'By signing up, I agree to Airbnb's Terms of Service,' and the hyperlink opened a document actually titled 'Terms of Service.'" Response (Dkt. 13) at 23. Plaintiff's assertion that these courts relied on the contract's title to reach their holdings is pure invention—neither case's analysis ascribes any importance to the contract's title. Indeed, *Williams* does not even confirm what the three relevant documents were titled, instead identifying them as "TOU" or "a Terms of Use Agreement." *Id.* at *2. Plaintiff's other cases purporting to address assent also have nothing to do with the question of whether the plaintiff knew what terms he was assenting to, which is the sole relevant inquiry. *See Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1158-59 (9th Cir. 2025) (addressing failure to clarify what act would manifest assent); *Godun v. JustAnswer LLC*, 135 F.4th 699, 713 (9th Cir. 2025) (same); *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857-58 (9th Cir. 2022) (same); *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 222 (4th Cir. 2024) (same); *White v. PayPal Holdings, Inc.*, 821 F. Supp. 3d 1058, 1070 (N.D. Cal. 2026) (addressing criteria for notice to be reasonably conspicuous).

Service, the Terms of Service will govern and will be the binding document with regards to that portion.

*See* Novak Declaration (Dkt. 10-1) ¶ 5, Exhibit 2 at 1.

For their part, the Terms of Service that follow in the same hyperlinked document plainly state in their opening paragraph: "The following Terms of Service ('TOS') contain the terms that govern your use of the Web Site and EasyCanvasPrints.com™ Service (as defined below). . . . Use of the EASY CANVAS PRINTS™ Web Site constitutes acceptance of these TOS." No reasonably prudent consumer could encounter this document and remain unaware that use of the EasyCanvasPrints.com website to complete a transaction would manifest their agreement to the full contents of the Terms of Sale *and* Terms of Service listed in the same BAS Terms and Conditions document.

As to the Terms of Sale's reference to a "Place Order Now" button instead of a "Secure Checkout" button, this discrepancy is immaterial to the arbitration question because the relevant inquiry asks whether Raskin assented to the arbitration provision that is contained in the Terms of Service – and thus it matters not at all whether the Terms of Sale ever went into effect. Nor is there any relevant issue of incorporation: the sign-in wrap notice incorporated the Terms document by unambiguously hyperlinking to it, and to the extent it matters, the Terms of Sale incorporate the Terms of Service by plainly stating, "The Terms of Service is hereby incorporated by reference into this document and thus by agreeing to comply with the Terms of Sale you again agree to comply with the Terms of Service."  Novak Declaration (Dkt. 10-1) ¶ 5, Exhibit 2 at 2. This language is straightforward. Nothing here could confuse or mislead a reasonably prudent consumer.

> 3.    *Even had Raskin not completed his sale, his use of the EasyCanvasPrints.com website—which links to its Terms of Use from its landing page—manifested his assent to the arbitration agreement.*

Plaintiff's challenge to his separate acceptance of the BAS Terms of Service (and thus the arbitration clause) by virtue of his use of the EasyCanvasPrints.com website to browse BAS products relies on the false premise that those Terms were inaccessible to website users until after their use of the website had already manifested their acceptance. Response at 21, 24. In fact, BAS' Terms of Use are and were linked directly from its website's landing page, so users can readily open and review them before deciding whether to assent by engaging any further with the EasyCanvasPrints.com website. *See* EasyCanvasPrints.com, and the hyperlinked Terms of Use appearing at the bottom of the page, as of November 4, 2025.[12] A reasonably prudent user entering the BAS website would click the "Terms of Use" link and find the Terms of Service, which plainly state in the first paragraph that continued use of the site constitutes acceptance of the Terms. A user who does not wish to consent must immediately stop using the site. Plaintiff's admission that he entered the website and used it at length is a second, independent reason he is bound by the BAS Terms of Service.

**B.    Plaintiff concedes that this Court can *only* address contract formation and must refer all questions of enforceability or scope to the arbitrator.**

The Response concedes that while this Court properly addresses whether a contract was formed, all subsequent issues—including enforceability, scope, or applicability of the arbitration clause—must be referred to arbitration. *See* Response (Dkt. 13) at 16-17 (citing, *e.g.*, *Granite Rock*

---

[12]   *Available at* https://web.archive.org/web/20251104091449/https://www.EasyCanvasPrints.com/ and https://web.archive.org/web/20251105063852/https://www.EasyCanvasPrints.com/termsofuse.

*Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)).

To the extent Plaintiff contends the arbitration provision is unconscionable, this is an *enforceability* question—not formation—and must be left to the arbitrator under the BAS Terms' delegation clause. *See* Response (Dkt. 13) at 21. Similarly, because the AAA rules delegate the issue of an arbitration agreement's scope to the arbitrator, none of the arguments in Response Section F are properly before the Court. *Id.* at 26–28.

**C.      There are no unresolved material factual issues to place before a jury.**

Plaintiff's demand for a jury trial is spurious. There is no substantive dispute concerning the material facts required to establish contract formation, so no issues can properly be tried to a jury. BAS and Raskin agree on the relevant contents and layout of the EasyCanvasPrints.com website Raskin used to make his purchase, as well as on the content of the document hyperlinked from the "Terms and Conditions" notice. They agree that Raskin encountered the sign-in wrap notification and then placed an order. These are the *only* facts material to the Court's determination of whether a contract was formed. Because the sole dispute over contract formation is the legal effect of these undisputed facts, a jury has no role in this determination. *See Christian v. Uber Techs., Inc.*, 775 F. Supp. 3d 272, 280 (D.D.C. 2025) (concluding that "a contract formed between the [p]laintiffs and Uber when Plaintiffs checked the box on the pop-up and clicked confirm" and finding that the plaintiffs "failed to establish any genuine dispute of material fact as to the formation of the Arbitration Agreement"). Under the governing law of this jurisdiction, the Court should hold as a matter of law that Plaintiff assented to the hyperlinked BAS Terms of Service, including the arbitration provision and its incorporated delegation clause, when he used the EasyCanvasPrints.com website to complete a purchase transaction.

25

Date: August 7, 2026

Respectfully submitted,

*Michael Weitzner*

Michael Weitzner, D.C. Bar No. 472505
MICHAEL WEITZNER, ATTORNEY AT LAW
4916 Brandywine Street, NW
Washington, D.C. 20016
202-905-1172
mweitzner@weitznerlaw.com

Ryan A. Botkin
*Pro Hac Vice Motion Pending*
State Bar No. 00793366
ryan@bccaustin.com
Jennifer Rappoport
*Pro Hac Vice Motion Pending*
State Bar No. 24072761
jennifer@bccaustin.com
Joshua A. Kelly
*Pro Hac Vice Motion Pending*
State Bar No. 24116605
josh@bccaustin.com

**BOTKIN CHIARELLO CALAF PLLC**
1209 Nueces Street
Austin, Texas 78701
(512) 615-2341 office
(737) 289-4695 facsimile

**Attorneys for Defendant**
**Build A Sign LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2026, a true and correct copy of this document was served upon the Plaintiff via the Court's electronic filing system.

*Michael Weitzner*

Michael Weitzner

26